400 So.2d 52 (1981)
Shaw FROM, Appellant,
v.
TALLAHASSEE DEMOCRAT, INC., and Knight-Ridder Newspapers, Inc., Appellees.
No. VV-379.
District Court of Appeal of Florida, First District.
May 28, 1981.
Rehearing Denied July 13, 1981.
*53 Jean Laramore, of Oertel & Laramore, Tallahassee, for appellant.
C. Gary Williams, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellees.
LILES, WOODIE A. (Retired), Associate Judge.
Jim Durham wrote a tennis column in the August 9, 1976, issue of the Tallahassee Democrat, which is owned by Knight-Ridder Newspapers, Inc. The article, which is set forth as follows in its entirety, concerned the tennis pro at the Winewood Country Club, Shaw From:
Winewood's pro comes a winner
Winewood Country Club's tennis program took a prestige leap Tuesday when Juan Ortiz signed a contract, replacing head pro Shaw From as of Sept. 1.
Ortiz came to Florida State University his freshman year as Puerto Rico's men's champ and fit right in at No. 2 or 3 behind Ricardo Bernd. His last year ('74), the wiry flash dropped to positions 4 and 5 due to a back injury, but started showing old form last October when he defeated Ray Bellamy for the TTA Top 16 title at Killearn.
Not only does Ortiz own the best playing credentials in town at present, but he also has a large and loyal junior following. His instructing popularity mushroomed during his six-month interim stint at Forestmeadows and now he has enlisted the majority of tourney-potential youngsters for his private lesson stable.
Winewood Corporation's Bill Cartee evidently liked the new pro's "customer is always right" philosophy, ingrained from a hotel and restaurant management background at FSU. A winning personality cinched it, but Oritz [sic] would do well not to hot [sic] all the shots in any future mixed doubles tournaments as he did at Killearn earlier this summer  not [sic] matter the stakes. Ordinarily he makes all the right moves while still scratching a living.
As a teacher of tennis, Ortiz knows his members come first. He also realizes he has taken his own fine game about as far as it's going to go. Keeping in shape and a reputation up are his motives for playing these days. His predecessor Shaw From, however, has an improving player's grand illusions, which contributed to his problems as a pro.
From, who knows tennis equipment well, did not fully understand his members' needs. Perhaps time to reflect will help him decide whether he wants to devote his efforts to becoming the best player he can be or the best pro.
The descending pro has contributed a lot of time to junior development in behalf of the Tallahassee Tennis Association (although, until it is truly organized that's like spinning wheels). His interests seem to be more in line with the kind of junior boom we can expect when Tom Brown Park's facility is christened  hopefully next spring.
If he stays around, From will be a candidate for the park's tennis directorship, but so will the highly capable and *54 tournament-tested Stu Bruner. Ortiz had one foot in the door, too, by heading the successful Parks and Recreation Department summer tennis. It will be interesting to see if a scrap develops for that job.
Meanwhile, Winewood ought to appreciate their new pro and vice-versa, for both have scored a coup. And the club might get two pros for the price of one if '76 Seminole Enrique Andrade of Ecuador returns from a three-week job as instructor at Alex Mayer's (Sandy's father) Camp in New Jersey to be Ortiz' assistant.
Mr. From thought the article to be libelous, and his attorneys sued the Tallahassee Democrat together with Knight-Ridder Newspapers, Inc. Ruling that From was a public figure, that the article was not libelous per se, and that the statements in the article were opinions and not false statements of fact, the trial court entered an order dismissing the suit with prejudice. In From's appeal he assigns as error this ruling which necessitates this Court's examining that ruling in the context of the Florida law as well as numberous federal cases. We believe the court incorrectly characterized From as a public figure. The record reflects that From was known only by the membership of the Winewood Country Club who participated in the tennis program together with people who travelled in those circles. This could hardly meet the test in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and their progeny.
The article was certainly not libelous per se but does fall within the definition of opinions as opposed to false statements of fact.
Historically, publishers were strictly liable for publication of defamatory statements unless they could prove that the statements were either true or privileged. Mashburn v. Collin, 355 So.2d 879 (La. 1977). Further, the common law defense of truth was sufficient. However, in 1964, the United States Supreme Court in New York Times v. Sullivan, supra, struck down that defense on the basis that truth standing alone was insufficient to protect freedom of expression and erected a constitutional privilege of fair comment respecting public officials. The Court held that guarantees afforded by the First Amendment prohibit a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not.
One of the privileges established by common law was that of "fair comment". This qualified privilege allowed a publisher to express an opinion or otherwise comment on matters of public interest. The common law evolved to offer qualified privileges to persons, institutions or groups who voluntarily injected themselves into the public scene in activities affecting a community's welfare, such as public officials, political candidates, community leaders, and persons taking a public position on a matter of public concern, as well as those offering their creations for public approval such as artists, performers and athletes. Mashburn, supra; Restatement of Torts 2d, § 566 (1977). The majority view held that only "comment" or "opinion" was protected and not misstatements of fact. Mashburn, supra; W. Prosser, Torts, § 188, p. 819 (4th Ed. 1971). This privilege, however, is lost when an opinion is published with malice showing either a bad faith or a bad motive. See Herman v. Labor Co-Op Educational & Publishing Society, 139 F. Supp. 35 (D.D.C. 1956). The minority view held that even false statements of fact were privileged if they were made for the public benefit with an honest belief in their truth. Harper and James, The Law of Torts, § 5.28 (1956).
In New York Times, the United States Supreme Court elevated the minority view to constitutional status and limited its use to criticism of public officials. Three years later, a majority of the Court agreed to extend this constitutional privilege to defamatory criticism of "public figures". Associated *55 Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).
The standard then to be applied became that of "actual malice" which was defined as "knowledge that the statement was false or ... reckless disregard of whether it was false or not." New York Times, supra; Walker, supra. The U.S. Supreme Court in St. Amant v. Thompson, 390 U.S. 727, 730-731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968), defined reckless disregard as:
"Reckless disregard" ... cannot be fully encompassed in one infallible definition... The cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.
In Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), the Supreme Court extended the actual malice standard when it said "all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." However, shortly thereafter in Gertz v. Robert Welch, Inc., supra, this privilege was drastically revised and a two-pronged test was pronounced for determining whether a person was a public figure and therefore subject to actual malice standard when it said:
In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions. 418 U.S. 351, 94 S.Ct. 2997, 41 L.Ed.2d 312.
It therefore becomes apparent that From is not a public figure for the purposes set forth in New York Times and Walker. Appellees urge that he was a public figure under Gertz. It can be seen from the article, which is a part of the complaint, that From was a tennis pro for the Winewood Country Club. He worked diligently to obtain publicity for himself and for the program. He organized a city-wide mixed doubles tournament and worked with the Winewood ladies' team and junior team in order to obtain publicity. At times he contributed financially to purchasing television ads. The Club itself advertised From and his picture and name were prominently featured in various ads. Accordingly, we look "to the nature and extent of his participation in the particular controversy giving rise to the defamation." Id., at 418 U.S. 352, 94 S.Ct. 2997, 41 L.Ed.2d 812. The record does not reveal that From ever attempted to discuss the situation described in the article with Jim Durham or any other media representative. He therefore "plainly did not thrust himself into the vortex of this public issue nor did he engage the public's attention in an attempt to influence its outcome." Id. Even had he done so, he did not become involved in a "public controversy" as envisioned in Gertz. See Time, Inc. v. Firestone, 424 U.S. 448, 454, 96 S.Ct. 958, 965, 47 L.Ed.2d 154 (1976); J. Eaton, The American Law of Defamation Through Gertz v. Robert Welch, Inc., and Beyond: An Analytical Primer, 61 Va.L.Rev. 1349, 1366 (1975).
Gertz went further and required the states to abandon their common law rule of strict liability for defamation actions but permitted them to adopt any standard of conduct in cases of defamation of private plaintiffs so long as it did not provide for liability without fault. As can be seen by an examination of the case law of Florida, the Supreme Court of our state has not had or taken the opportunity to adopt an actual malice or simple negligence standard, and we restrain ourselves from doing so in this case. Suffice it to say that even though the complaint contains the magic words and allegations of actual malice, the article, which is a part of the complaint, is not libelous whether measured by an actual malice or simple negligence standard. We *56 are not unmindful that several post-Gertz cases decided by Florida courts appear to indicate in dicta that a negligence standard has been adopted vis-a-vis private citizen plaintiffs. See Helton v. United Press International, 303 So.2d 650 (Fla. 1st DCA 1974); Karp v. The Miami Herald Publishing Company, 359 So.2d 580 (Fla. 3d DCA 1978); Gadsden County Times, Inc. v. Horne, 382 So.2d 347 (Fla. 1st DCA 1980). These cases, however, do not mandate a negligence standard and are distinguishable from the holding of this Court. In Helton, this Court observed:
According to Gertz, the doctrine of "public or general issue" is no longer available to the media as a defense in a defamation suit by a citizen who is neither a public official or a public figure. Defamation plaintiffs that are neither public officials nor public figures are no longer required to prove knowledge of falsity or reckless disregard for the truth as apparently was required by the progenitors of Gertz. Id., at 651.
The above language correctly notes that Gertz does not require an actual malice standard for publications involving matters of public interest or concern. What it fails to note is that while Gertz no longer requires an actual malice standard as a matter of constitutional principle under the First Amendment, it does not foreclose the state courts from choosing an actual malice standard. Id.
In Karp, supra, the Third District Court of Appeal also apparently applied a negligence standard regarding private plaintiffs in defamation cases. However, the actual holding in that case was that The Miami Herald was not even negligent as established by summary judgment in the circuit court. Id., at 581-2. Further, the Third District Court of Appeal adopted the lower court's reliance on Time, Inc. v. Firestone, supra, as authority for concluding that negligence was the appropriate standard. Karp, footnote 1, at 581. This conclusion is based upon an erroneous interpretation of Time, Inc. v. Firestone, for the United States Supreme Court reversed because the Florida Supreme Court had failed to enunciate a standard of fault. That opinion does not mandate a negligence standard.
This issue was also briefly touched upon by a panel of this Court in Gadsden County Times, Inc. v. Horne, supra. The strict holding in that case, however, is that common law certiorari does not lie to review an order denying a motion for partial summary judgment on the issue of whether the plaintiff is a public figure. Dicta does imply that under Gertz a negligence standard should apply in cases involving private individuals, Id., at 349. Nevertheless, as set forth above, Gertz does not mandate a negligence standard for the states in private defamation suits. Further, Gadsden does not address the issue of what standard should apply to suits filed by private persons involved in matters of public or general concern, as this case does.
A careful examination of the article itself reveals that only two statements could conceivably possess a defamatory meaning:
... His predecessor Shaw From, however, has an improving player's grand illusions, which contributed to his problems as a pro.
From, who knows tennis equipment well, did not fully understand his members' needs... .
The question, then, is whether or not those statements are statements of fact or statements of opinion. If they are statements of opinion, they are not actionable.
Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas. Gertz, at 418 U.S. 339-340, 94 S.Ct. 3007, 41 L.Ed.2d 805.
The determination of whether a statement is one of fact or of opinion has been, by several courts, determined to be a question of law and therefore made by the court and not by a jury. Again, this question has not heretofore been clearly answered in Florida, but we think the better view should be as pronounced in Bucher v. Roberts, 595 P.2d 239 *57 (Colo. 1979), and Rinaldi v. Holt, Rhinehart & Winston, Inc., 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, cert. denied, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). We adopt the view that it is a question of law for the court and hold that these statements contained in the article are opinion, which is a critical judgment made by the author.
Gertz would indicate that expressions of opinion are privileged and protected by the Constitution. There is, however, a distinction between pure expression of opinion and mixed expression of opinion. Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication. Restatement (Second) of Torts, § 566, pp. 171-172. The opinions contained in the article are not based upon facts disclosed in the article itself but rather From's performance and position in the Tallahassee tennis community provides the assumed facts upon which the author could base his opinion. See Information Control v. Genesis One Computer Corp., 611 F.2d 781 (9th Cir.1980):
In sum, the test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published. Id., at 784.
The statements were made in a tennis column in a local newspaper to an audience who would be expected to be aware of the tennis pro's situation at the Winewood Country Club. From admits as much when he agrees that even if the column had not been written, everyone in the Tallahassee tennis circles would have known that his contract was not renewed and that Juan Ortiz had replaced him. Further, his performance as a tennis pro in this community provides the assumed facts from which Jim Durham drew his opinion. See also Mashburn, supra; Cherry v. Des Moines Leader, 114 Iowa 298, 86 N.W. 323 (1901). He could not invite the attention of the public as he did through his efforts at self-promotion and then complain if the attention was not favorable. It is therefore readily seen that these statements are privileged pure opinion and not defamatory and thus not actionable. See Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976). The article is not libelous per se under Gertz. In fact, libel per se is no longer a viable doctrine where the defendant is a member of the news media and the plaintiff cannot demonstrate "actual malice" on the part of the defendant. Gertz says, and we quote:
... [w]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth. 418 U.S. 349, 94 S.Ct. 2997, 41 L.Ed.2d 810.
This language seems to end the distinction between libel per quod and libel per se. See Memphis Publishing Company v. Nichols, 569 S.W.2d 412, 419 (Tenn. 1978), quoting Eaton, at 1434. See also Metromedia, Inc. v. Hillman, 285 Md. 161, 400 A.2d 1117, 1118-9 (1979). Since pleading and proof of actual injury are required in most cases per Gertz, all libels governed by Gertz are, in effect, libel per quod. As Justice Powell noted:
... [t]he doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injuries sustained by the act of a false *58 fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury. 418 U.S. 349, 94 S.Ct. 2997, 41 L.Ed.2d 811.
In summary, the trial judge's characterization of From as a public figure, when measured by Gertz, was improper though not reversible. The article itself, a part of the complaint, can neither be actionable under a standard of actual malice or simple negligence; and without adopting either standard as the law of Florida, we do hold, however, that the trial judge reached the proper result, and we affirm his order.
AFFIRMED.
THOMPSON, J., concurs.
ROBERT P. SMITH, Jr., J., dissents with opinion.
ROBERT P. SMITH, Jr., Judge, dissenting:
I think From's complaint states a cause of action for defamation sufficient to withstand a motion to dismiss. The attribution to him of "an improving player's grand illusions, which contributed to his problems as a pro," and the statement that From "did not fully understand his members' needs" are susceptible of being understood as attributing to From conduct incompatible with the proper performance of his profession as a teaching tennis professional, causing the damages specifically alleged. Drennen v. Westinghouse Elec. Corp., 328 So.2d 52, 54 (Fla. 1st DCA 1976). From's allegations that this material was published falsely and with negligence or actual malice are sufficient to satisfy whatever standard of conduct may be found, on a more mature record, to be pertinent in the case of this newspaper defendant.
In my opinion, the Gertz aphorism that "there is no such thing as a false idea" imposes no constitutional restriction on the defamation claim of a private figure such as From, and does not change the common law that the qualified privilege to express an opinion or otherwise comment fairly on matters of public interest[1] is an affirmative defense that like other such privileges must be pleaded and proved by the defendant. Glynn v. City of Kissimmee, 383 So.2d 774 (Fla. 5th DCA 1980). As is the case of any other qualified privilege, that one may be defeated by actual or express malice. 1 A. Hanson, Libel and Related Torts §§ 137-38, 147-50 (1969); Gibson v. Maloney, 231 So.2d 823 (Fla. 1970), cert. den., 410 U.S. 984, 93 S.Ct. 1505, 36 L.Ed.2d 180 (1973). In other words, defamatory matter uttered concerning a private figure gains no immunity from the notion, contradicting alleged fact, that by nature an opinion cannot have falsely described plaintiff; such defaming gains immunity, if at all, from the speaker's privilege of utterance absent malice. Thus a private figure's complaint alleging publication, falsity, defamatory tendency, actual damage and malice cannot be held insufficient as a matter of law, whatever may later be shown in defense. E.g., Loeb v. Geronemus, 66 So.2d 241 (Fla. 1953).
I would not reach and therefore do not attempt to fathom the questions of whether what was published concerning From  who was, I repeat, a private figure, contrast Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976), cert. den., 354 So.2d 351 (Fla. 1977)  was pure or mixed opinion and whether those interested enough to have read the article may be supposed to have known the facts, unstated, on which the opinion was based, thus making the complaint nonactionable under this approach. Whether this kind of bootstrapping defense is ever appropriate for a publication made to the community at large, I doubt; I do not doubt that it is inappropriate on a motion to dismiss a private figure's complaint for failure to state a cause of action.
I therefore respectfully dissent, and would reverse the order dismissing From's complaint.
NOTES
[1] Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897); Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Abram v. Odham, 89 So.2d 334 (Fla. 1956).