## RUDESYLE v. COLL
No. 81-24832
Circuit Court, Broward County
May 27, 1982

Greg Esposito, Jr., for plaintiff.

Talbot D'Alemberte, Steel Hector & Davis, for defendant.

BARRY J. STONE, Circuit Judge.

A full hearing has been concluded on the motion of the Defendant for Final Summary Judgment. The Court considered the pleadings, depositions, interrogatories, and affidavits on file, as well as the memoranda of law and oral argument submitted by counsel for the parties.

The Court particularly considered the affidavits of the Plaintiff, CLARE ANN RUDESYLE, and the affidavit of Seymour London which were filed on behalf of the Plaintiff in opposition to the Motion for Summary Judgment, and though the Defendant has moved to strike those affidavits as hearsay, the Court has accepted those affidavits as part of the record in this cause.

## UNDISPUTED MATERIAL FACTS

The following facts are undisputed and uncontradicted:

This is an action for defamation brought by the Plaintiff, CLARE ANN RUDESYLE, a licensed real estate salesperson, against the Defendant, NORMAN COLL, an attorney. Mr. Coll had engaged the salesperson's employer, The Klock Company, a real estate firm, to perform a free "market analysis" to determine the market value of Mrs. Ruth McDonald's condominium property. Mrs. Ruth McDonald is the elderly mother of Michigan Judge, Gary McDonald, who in turn was a school friend of the Defendant. Mr. Coll had been contacted by Gary McDonald to represent his mother and that Mrs. McDonald knew of, and approved of, this contact.

When Mr. Coll engaged The Klock Company to perform the "market analysis" for Mrs. McDonald, he indicated to the manager that Mrs. McDonald was contemplating selling the property, had received several inquiries from persons in the building, but did not know what it was worth. Mr. Coll's subsequent letter of March 6, 1981 to The Klock Company requesting that the "market analysis" be performed does not request The Klock Company to list the property.

Miss Rudesyle received the assignment from The Klock Company to contact Mrs. McDonald and following their communications Mrs. McDonald signed a listing agreement with The Klock Company.

Mr. Coll wrote to let Gary McDonald know of the events that had transpired, and he then contacted his mother by phone. According to Judge McDonald's affidavit, his mother was quite upset when he called her, she was confused, and she indicated she felt she had no alternative but to sign the agreement.

Gary McDonald then called Mr. Coll and asked him to notify The Klock Company not to list the property or to place it on the multiple listing service so that his mother could attempt to sell the property herself to persons within the building. This phone call from Judge McDonald to Mr. Coll precipitated Mr. Coll's letter which is the subject of this defamation action.

The letter stated that Mr. Coll was not certain Mrs. McDonald had been furnished correct information and it questioned the manner and method in which the listing had been obtained, asking that the property not be listed or placed on the multiple listing service. The Plaintiff asserts that her reputation was damaged by this letter.

There is no evidentiary basis for any claim of specific malice in this case. The Plaintiff and the Defendant do not know each other.

## CONCLUSIONS OF LAW

A. Statements of Opinion Are Constitutionally Protected.

In *From v. Tallahassee Democrat,* 400 So.2d 52 (Fla. 1st DCA 1981), quoting from a recent federal decision (*Information v. Genesis One Computer Corp.,* 611 F.2d 781 (9th Cir. 1980) the Court stated:

> In sum, the test to be applied in determining whether an allegedly defamatory statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

Here, the alleged defamation consists of three statements in a letter from the Defendant to her broker, as follows:

(1) "I am not certain that she (Mrs. McDonald) was furnished correct information by your company."

(2) "For all the foregoing reasons, I do not believe that the listing agreement is valid, and I question the manner and method in which it was obtained."

(3) "Under these circumstances, please do not list the property, or place it on multiple listing."

Given the circumstances described in Mr. Coll's letter, circumstances reported to Mr. Coll by Mrs. McDonald's son, these words as a matter of law are not defamatory, particularly as it was Mr. Coll who initially hired The Klock Company for Mrs. McDonald.

Florida courts have recognized that defamation actions are not to be used to redress every casual comment, personal insult, unflattering remark, or accusation.[1] Moreover, statements of opinion or conjecture are privileged.

The First Amendment of the United States Constitution and Article I, Section 4 of the Florida Constitution, protect statements of opinion. The United States Supreme Court has recognized the absolute constitutional protection which extends to opinions. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974). The Court stated in *Gertz* that:

We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of ideas.

418 U.S. at 339-40

In *From v. Tallahassee Democrat,* 400 So.2d 52 (Fla. 1st DCA 1981), the Court provides a thorough analysis of the absolute protection afforded to opinions. The defendant in that case published a column which was critical of the local tennis pro. The column stated that the plaintiff, Mr. From, had "an improving player's grand illusions, which

---

[1] A real estate salesperson must expect to receive comments or even complaints from time to time from customers. A professional cannot turn to the courts for assistance simply because someone has complained or questioned services. Here, the comments to The Klock Company came from Mr. Coll who was responsible for the company being involved.

contributed to his problems as a pro'' and that the plaintiff ''did not fully understand his member's needs.'' 400 So.2d at 56.

The *From* Court found that given the true factual assertions in the column about the tennis pro and the general public knowledge about the pro, the statements published by the *Democrat* were pure opinions and could not be the subject of a libel action.

In a case involving a non-media defendant, the United States Court of Appeals for the Fifth Circuit, applying Florida law, used the same type of analysis in *Church of Scientology of California v. Cazares,* 638 F.2d 1272 (5th Cir. 1981). That court concluded a mayor's criticisms of the Church of Scientology were absolutely protected. The court closely scrutinized the mayor's characterization of the Church as a ''paramilitary organization'' and concluded that, ''It was simply an opinion based in fact: the statement reflects his perception of the armed guards and security devices.'' 638 F.2d at 1289. Examining other criticisms of the Church, the Court held that ''under the most recent articulations of Florida law (*Coleman, supra,* and *Early, supra*), the words . . . read in context, although uncomplimentary, were not defamatory as a matter of law and the trial court properly granted defendant's motion to dismiss.''

Applying these principles to the statements made by Mr. Coll in his letter to The Klock Company, the statements are non-actionable opinions. No actionable statement of *fact* is made in the letter.

B.   Even if the Statements were Defamatory they are Privileged Statements by an Attorney.

The Court further finds that:

Even if Mr. Coll's statements were not regarded as absolutely privileged opinions, the Defendant is entitled to summary judgment in his favor because the statements are protected by a qualified privilege and the Plaintiff has failed to show any malice.

This privilege arises from the relationship between the Defendant and Mrs. McDonald.

The affidavits of Ruth McDonald and Gary McDonald, and the affidavit and deposition of Norman Coll demonstrate that an attorney-client relationship existed between Mr. Coll and Mrs. McDonald and that Mr. Coll had every reason to believe he was acting as her attorney.

Of fundamental importance to our entire legal system is an attorney's freedom to pursue justice for his clients. If inhibited by the threat of

defamation actions, an attorney may not adequately perform the role of zealous advocate that the Code of Professional Responsibility requires him to undertake. Therefore, Florida law holds lawyers immune from libel and slander actions when acting to advance their clients' interests, or what they perceive to be their client's interests.

The most recent Florida case dealing with this privilege is *Sussman v. Damian,* 355 So.2d 809 (Fla.3d DCA 1977), an action which the court described as arising out of a conversation between lawyers which "eventually became quite heated until the defendant Damian exploded in the elevator with a strong personal attack on Sussman's professional integrity accusing Sussman of improprieties in the handling of client monies and trust funds unrelated to the subject matter of the lawsuit which up to that point was being discussed during their conversation and expressing a desire to see Sussman disbarred."

During a deposition prior to the conversation, Sussman had called Damian "a damned liar."

In analyzing whether any of the statements could be held actionable, the Court reflected on the important values protected by the strong privileges of free speech for lawyers:

> The basis for such absolute. or qualified privileges for lawyers is to permit a free adversarial atmosphere to flourish, which atmosphere is so essential to our system of justice. In fulfilling their obligations to their client and to the court, it is essential that lawyers, subject only to control by the trial court and the bar, should be free to act on their own best judgment in prosecuting or defending a lawsuit without fear of later having to defend a civil action for defamation for something said or written during the litigation. A contrary rule might very well deter counsel from saying or writing anything controversial for fear of antagonizing someone involved in the case and thus courting a lawsuit, a result which would seriously hamper the cause of justice. As such, the law has long looked with disfavor on such slander actions against lawyers uttered in the due course of judicial procedure except in the most extreme cases where the defamatory statement was totally irrelevant to the lawsuit and was uttered with deliberate and premeditated malice. I Harper and James, The Law of Torts, 427 (1956).

355 So.2d at 811.

The Court held that Sussman's statements about Damian were absolutely privileged because they were made during a judicial proceeding. As to

the statements made by Damian *outside of any judicial proceeding,* the Court found these protected by a qualified privilege and, since the plaintiff could not show the "express malice" which would negate that privilege, found for the defendant also. The court stated:

> True, the statement contained strong defamatory words, used expressions which were both angry and intemperate, and asserted presumed untruths. Such a statement nonetheless is insufficient proof of express malice under the law of this state.

355 So.2d at 812.

Numerous other state and federal courts and the Restatement of Torts, Second §586 have recognized the importance of protecting the free speech of lawyers in the course of their duties. *See. e.q., Theiss v. Scherer,* 396 F.2d 646 (6th Cir. 1968); *Sriberg v. Raymond,* 544 F.2d 15 (1st Cir. 1976); *Libco v. Adams,* 100 Ill. App. 3d 314, 426 N.E.2d 1130 (Ill. App. 1981). This Court finds no reason or authority that would preclude the applicability of the above policies to this case.

The Court further finds that there is no genuine issue as to any material fact and the Defendant is entitled to a Summary Final Judgment as a matter of law.

It is therefore,

ORDERED that the Defendant's motion to strike the affidavits of the Plaintiff and Seymour London is denied. It is further,

ORDERED that Summary Final Judgment be entered for the Defendant, NORMAN COLL, and against the Plaintiff, CLARE ANN RUDESYLE, that the action be dismissed with prejudice and that the Plaintiff shall take nothing by this action and the Defendant shall go hence without day. The Court retains jurisdiction to tax the costs and expenses of litigation as may be appropriate under these circumstances.

