# VICTOR v. NEWS AND SUN-SENTINEL COMPANY, et al.

Case No. 84-00113 DF

Seventeenth Judicial Circuit, Broward County

July 13, 1984

### APPEARANCES OF COUNSEL

**Terry S. Bienstock** and **Lauri B. Waldman** for plaintiffs.
**Ray Ferrero, Jr.,** and **Ricki Tannen** for defendants.

### OPINION OF THE COURT

M. DANIEL FUTCH, JR., Circuit Judge.

THIS CAUSE was heard on Defendants' Motion to Dismiss Amended Complaint with Prejudice, and the Court having heard argument of counsel, having reviewed written memoranda submitted by both parties, and being fully advised in the premises, hereby finds that Defendants' Motion to Dismiss should be granted for the following reasons:

1. This litigation stems from a series of columns written by the theatre critic of the Fort Lauderdale News and Sun-Sentinel regarding the change in ownership and subsequent developments surrounding the only legitimate dinner theatre in Broward County, the Oakland West Dinner Theatre. The columns reported on the artistic creations offered for public approval and provided background information concerning the renovations, projected plans and eventual demise of the Oakland

West Dinner Theatre. The Artistic Director (David Goldman) and Executive Director (Reese Victor) brought this lawsuit based upon four articles which were critical of Reese Victor and David Goldman's creative endeavors and professional competence.[1]

2. It is for the trial court to determine as a matter of law whether the statements complained of are reasonably capable of defamatory meaning. *Wolfson v. Kirk,* 273 So.2d 774 (Fla. 4th DCA 1973). In making this determination, this court has construed the allegedly defamatory statements in context, that is within the framework of columns with a *Theatre/Film* headline or under a by-line reading *Theatre/Film Writer* and about a dinner theatre in Broward County.

This Court finds that after reading the articles, independently and collectively, that they do not have the connotations attributed to them. Put simply, there is no defamatory meaning present on the face of the publications and therefore no cause of action.

3. Additionally, the Amended Complaint does not state a cause of action against the Defendants because the statements complained of were privileged under the doctrine of fair comment and neutral reportage. The Plaintiffs offered their creations for public approval, and the News and Sun-Sentinel's publication of information relating to, and opinions about, these creative endeavors is privileged and therefore non-actionable.

4. A Motion to Dismiss is appropriate in this case because the court has before it a libel complaint together with the essential documents, the columns themselves which contain the allegedly defamatory statements. The trial courts in Florida have routinely dismissed with prejudice libel complaints directed against media defendants where there is a lack of defamatory meaning or the publication is privileged. See e.g. *Smith v. Taylor Publishing Co.,* 9 F.L.W. 77 (1st DCA 1984); *From v. Tallahassee Democrat,* 400 So.2d 52 (Fla. 1st DCA 1981); *Abram v. Odham,* 89 So.2d 334 (Fla. 1956); *Kurtell & Co. v. Miami Tribune, Inc.,* 193 So.2d 471 (Fla. 3d DCA 1967).

5. In the present case, the Plaintiffs "offered their creations for public approval". *Mashburn v. Collin,* 355 So.2d 879 (S.Ct. La. 1977). As such, they invited the attention of the theatre going public and those who have a duty to provide information to the public such as the

---

[1] The entire series of 12 articles was not before the Court, only the 5 columns attached to the Amended Complaint. Each column is a separate count of the Amended Complaint. The Defendant News and Sun-Sentinel published the articles named in Counts I–IV. The Defendant Jack Zink is alleged to have caused the article named in County V to be published in Variety newspaper, an entertainment daily.

Defendant News and Sun-Sentinel Company and its theatre editor, Jack Zink.

The Florida Supreme Court has fully supported this view, albeit not in a libel case but in an analogous ruling:

> We think the rule is now generally accepted that any one who seeks public employment or public office or who makes his living by dealing with the public of otherwise seeks public patronage, submits his private character to the scrutiny of those whose patronage he implores, and that they may determine whether it squares with such a standard of integrity and correct morals as warrants their approval. *(Kennett v. Barber,* 31 So.2d 44, 46 (Fla. 1947).

As the Court in *Kurtell v. Miami Tribune Co.,* 193 So.2d 471 (Fla. 3d DCA 1967) stated so well:

> The fact that the Plaintiffs may not like the way a column was written or what it says about them does not automatically provide the basis for a libel suit. (citing *Mann v. Roosevelt Shop, Inc.,* 41 So.2d 894 (Fla. 1949)).

6. The dual common law privileges of fair comment and neutral reportage on matters of public concern are applicable to the various counts of the Amended Complaint. In *Coogler v. Rhodes,* 21 So. 109 (Fla. 1897), the principles and policies underlying the Florida common law privileges relating to publication were explained. The general proposition is:

> Where a person is so situated that it becomes right, in the interest of society, that he should tell to a third person certain facts, then, if he bone fide, and without malice, does tell them, it is a privileged communication.

This privilege to publish matters of public concern is bottomed on a long line of Florida case law which focus on the necessity of protecting speech about public matters. See e.g. *Gibson v. Maloney,* 231 So.2d 823 (Fla. 1970), *Abram v. Odham,* 89 So.2d 334 (Fla. 1956), and *Coogler v. Rhodes,* 21 So. 109 (Fla. 1897).

This privilege of fair comment applies to the publication of information about matters of public concern in a community such as Fort Lauderdale. Events concerning the only dinner theatre are certainly of "real public or general concern". As the Florida Supreme Court has held:

> matters of public or general concern are those who invoke common

134

and predominant public activity, participation of indulgence; and cogitation, study and debate; and they include such matters as sporting events, the performing and fine arts, morality and religion, the sciences, and matters relating generally to the health, well-being and general comfort of the public as a whole. *Firestone v. Time,* 271 So.2d 745, 749 (Fla. 1972)).

7. Counts I and V can be treated together for purposes of discussing the privilege which applies because both are columns containing the opinions of the Defendant News and Sun-Sentinel Company's theatre and film critic, Defendant Jack Zink.

The key Florida case which deals with the fair comment/opinion privilege is *From v. Tallahassee Democrat,* 400 So.2d 52 (Fla. 1st DCA 1981). The *From* court affirmed the trial court's dismissal of a libel complaint with prejudice after extensive discussion of the Florida common law and Federal constitutional cases.

The libel action in *From* concerned a local tennis column which was critical of a former pro. The court, after reading the article in its entirety, determined that the article was not defamatory on its face and fell within the definition of protected opinion rather than false statements of fact. In its discussion of the common law privilege of fair comment the *From* court states that opinions regarding those that offer theatrical productions come within the scope of the privilege:

> One of the privileges established by common law was that of "fair comment". This qualified *privilege allowed a publisher to express an opinion or otherwise comment on matters of public interest.* The common law evolved to offer qualified privileges to persons, institutions or groups who voluntarily injected themselves into the public scene in activities affecting a community's welfare, such as public officials, political candidates, community leaders, and persons taking a public position on a matter of public concern, *as well as those offering their creations for public approval such as artists, performers and athletes.*

400 So.2d 54.

The *From* court looked at the article attached to the Complaint and determined first that only two statements "could conceivably possess a defamatory meaning". The court then determined whether those statements were fact or opinion, stating that *"if they are statements of opinion, they are not actionable"* 400 So.2d 56. The court further noted that this preliminary determination is a "question of law and therefore made by the court and not a jury." 400 So.2d 56.

**135**

In determining that the statements were non-actionable opinion,[2] the *From* court set forth the accepted test to be used in making that determination, from *Information Control v. Genesis One Computer Corp.,* 611 F.2d 781 (9th Cir. 1980):

> In sum, *the test* to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact *requires that the court examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence.* In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, *the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.* Id., at 784.

A reading of the *Changes Needed at Oakland West* (Count I) and *Financier leaves tangle in two cities* (Count V) columns show that:

1) The statements were made in a Film/Theatre column in a local newspaper to an audience who would be expected to be aware of the series of articles regarding the Oakland West Dinner Theatre and of the change in artistic directors and producers.

2) Each opinion expressed by the Film/Theatre writer Jack Zink was fully supported by facts set forth in the article itself or which were otherwise known or available to the reader.

The Court's reading of the Count I and Count V columns demonstrated that the Plaintiffs have drawn totally unsupported inferences from the column.

As the *From* court stated and which is fully applicable to the Plaintiffs here:

> *He could not invite the attention of the public* as he did through his efforts at self-promotion and *then complain* if the attention was not favorable. It is therefore readily seen that *these statements are*

---

[2] *"Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public.* Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication. Restatement (Second) of Torts, Section 566. pp. 171–172. The opinions contained in the article are not based upon facts disclosed in the article itself but rather From's performance and position in the Tallahassee tennis community provides the assumed facts upon which the author could base his opinion." 400 So.2d 56.

136

*privileged pure opinion and not defamatory and thus not actionable.*
See *Palm Beach Newspapers, Inc. v. Early,* 334 So.2d 50 (Fla. 4th
DCA 1976).

After reading the two columns complained of as defamatory in Count I
and V, applying the principles of *From* and *Genesis One,* supra, the
only conclusion that can be drawn is that the columns were "pure
expressions" of opinion and therefore non-actionable.

8. Count II concerns the closing of the Oakland West Dinner
Theatre in an article entitled *Theatre dims lights, leaves bills* under
Defendant Jack Zink's byline as Theatre/Film Writer:

Count III concerns a "squib" or short statement about the Oakland
West Dinner Theatre which was published as an addendum to Jack
Zink's regular Film/Theatre column entitled *Foreman works on Coca-
Cola fizzle.*

Count IV concerns the Oakland West Dinner Theatre's petition for
bankruptcy in an article entitled *Theatre files for bankruptcy; patrons
may not get refunds* under Jack Zink's byline as Theatre/Film Writer.

Count VI concerns the bankruptcy of Oakland West Dinner Theatre
as reported in Variety newspaper under the headline *Fla. D-T Chain
Goes Bankrupt; Lists 488G in Unsecured Debts.*

All of the articles are fully privileged under the constitutional and
common law doctrine of "neutral reportage". That doctrine, simply
stated, "protects disinterested reporting of statements by others con-
cerning an event of public concern". *El Amin v. Miami Herald,* 9
Med.L.Rptr. 1079, 1081 (Dade County 1983) *Bair v. Palm Beach
Newspapers,* 8 Med.L.Rptr. 2028 (Fla. Cir. Ct. Palm Beach 1982),
affirmed 4th DCA per curiam 10 Med.L.Rptr. 1624 (1984). The Court
in *El Amin* quoted from *Edwards v. National Audubon Society, Inc.,*
556 F.2d 113 (2d Cir. 1977), cert. denied, 434 U.S. 1002, 98 S.Ct. 647,
54 L.Ed.2d 498 (1977) for the proposition that:

The *public interest in being fully informed* about controversies that
often rage about sensitive issues *demands that the press be afforded
the freedom to report such charges without assuming responsibility
for them.* Id. at 120.

Jack Zink was involved in reporting to an understandably interested
public the closing of the Oakland West Dinner Theatre, the only
dinner theatre in Broward County.

This Court's review of the columns complained of in Counts II, III,
IV and VI demonstrated that they were above all simply not defama-

137

tory and therefore not actionable. Additionally, as previously stated, each article is fully protected by the neutral reportage privilege.

9. In conclusion, this Court finds that the Plaintiffs have taken issue with and draw unsupported conclusions from selected columns in a series which are above all else *not defamatory*. Each column is additionally protected by privilege. The alleged defamatory statements are not actionable and therefore all counts are dismissed with prejudice.