667 So.2d 350 (1995)
Barbara DEMBY, Appellant,
v.
Catherine A. ENGLISH, Appellee.
No. 94-3203.
District Court of Appeal of Florida, First District.
October 27, 1995.
Rehearing Denied February 21, 1996.
*351 Linda Miklowitz, Tallahassee, for Appellant.
D. Andrew Byrne of Pennington & Haben, P.A., Tallahassee, for Appellee.
PER CURIAM.
We review the trial court's denial of appellant's request for attorney fees pursuant to section 57.105, Florida Statutes, following *352 dismissal of the action for defamation filed against her. Because we find a complete absence of any justiciable issue in this case, we reverse.
Catherine A. English (appellee) is Director of Leon County Animal Control Division and in this capacity is a member of the Dangerous Animal Classification Committee (Committee), consisting of the Director, the sheriff, and a citizen appointed by the Board of County Commissioners. In 1991, the Committee determined that Max, a Rottweiler, was "dangerous" and must be euthanised. The Max matter was given much media attention, traveled from county to circuit court and back again, and was the subject of public discussion in at least one meeting of the Leon County Board of County Commissioners.
In August 1993, Dr. Barbara Demby (appellant) wrote a letter to County Commissioner Bruce Host,[1] and another citizen Susan Kane wrote a separate letter to all the county commissioners regarding Max the Rottweiler's plight and complaining about appellee's job performance. Appellee filed a complaint against appellant and Kane on October 8, 1993, alleging defamation of appellee's "business reputation" in these letters and requesting compensatory and punitive damages of no less than $50,000 and injunctive relief. In response both appellant and Kane filed separate motions to dismiss with prejudice and motions for attorney's fees and costs under sections 57.105 and 57.041, Florida Statutes. The motions claimed that appellee failed to state a cause of action because the remarks were conditionally privileged and were not defamation as a matter of law. The court granted these motions to dismiss on March 25, 1994, and expressly retained jurisdiction to determine attorneys' fees. On June 1, 1994, the court entered an order approving a stipulation for dismissal with prejudice as to Kane. Following appellee's motion for clarification of the dismissal order, however, the court issued an order stating that the March 25 dismissal was without prejudice and granted leave for amendment of the complaint. Appellee filed an amended complaint against appellant only on June 17, 1994, but voluntarily dismissed it three days later. On August 31, 1994, the court denied appellant's earlier motion for attorney's fees.
Section 57.105(1), Florida Statutes, provides in pertinent part as follows:
The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party; provided, however, that the losing party's attorney is not responsible if he has acted *353 in good faith, based on the representations of his client.
For the court to award attorney's fees under this statute, the action must be "`so clearly devoid of merit both on the facts and the law as to be completely untenable.'" Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501 (Fla. 1982) (quoting Allen v. Estate of Dutton, 384 So.2d 171, 175 (Fla. 5th DCA 1980). The court in Whitten equated the lack of a justiciable issue with a frivolous appeal, which is an action "`so clearly untenable, or the insufficiency of which is so manifest on a bare inspection of the record and assignments of error, that its character may be determined without argument or research.'" 410 So.2d at 505 (quoting Treat v. State ex rel. Mitton, 121 Fla. 509, 163 So. 883, 883-84 (1935)). The purpose of the statute is to "discourage baseless claims, stonewall defenses and sham appeals in civil litigation." Whitten at 505. Although not every party that prevails in a motion to dismiss for failure to state a cause of action is entitled to fees under section 57.105, fees should have been awarded in the instant case.
The complaint alleged that appellee is a private figure and that the alleged defamatory remarks were made with express malice.[2] Appellant does not dispute that she wrote and sent the letter which serves as basis for the action to her county commissioner. The initial question is whether there was an actionable defamation in the letter. Under Florida common-law principles anyone who publishes defamatory matter is not liable if the remarks are published upon a conditionally privileged occasion and the privilege is not abused. To be qualifiedly privileged, a publication must be made (1) in good faith (2) by one who has a duty or interest in the subject matter (3) to someone who has a corresponding duty or interest (4) "even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." The publication may be qualifiedly privileged even if it is untrue. 19 Fla.Jur.2d Defamation and Privacy § 58 (1980).
In Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984), the court determined that a father's remarks regarding his son's teacher addressed to the school board during a public meeting were qualifiedly privileged under each of several theories applicable here: (1) that there was a mutuality of interest between the speaker and the listener, (2) that the remarks were made for the protection of the recipient's interest in receiving information on the performance of its employee, and (3) that the statements were those of a citizen to a political authority regarding matters of public concern. Nodar at 809-10. A cursory examination of the facts here indicates that the letter is from a private citizen to a county commissioner regarding a controversy within the county government's jurisdiction that has been the subject of media attention and county commission meetings. This same letter also comments on the job performance of the director of the Leon County Animal Control Division, a county employee involved in the controversy in her official capacity. Under any of the theories described above, this letter is conditionally privileged as a matter of law. As a result, the presumption of malice is replaced by a presumption of good faith. Id. at 810.
The next question is whether appellant abused the conditional privilege by writing the letter with express malice, that is ill will, hostility, and evil intention to injure and defame. Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887). Malice cannot be inferred from the fact that some statements are untrue. Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, 112 (1897). In Nodar the court stated that
[w]here a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate *354 words do not alone show express malice; rather there must be a showing that the speaker used his privileged position "to gratify his malevolence." If the occasion of the communication is privileged because of a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff.
Nodar at 811-12 (citations omitted). In the instant case as in Nodar, the letter cannot support an allegation that appellant wrote the letter to "gratify her malevolence" or was "motivated more by a desire to harm the person defamed than by a purpose to protect the person or social interest giving rise to the privilege." Nodar at 811. In addition, the words in appellant's letter clearly "are not so extreme as to demonstrate express malice." Id. at 812. Appellant's claims are "devoid of even arguable substance." Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 506 (Fla. 1982). The entire action is meritless.
Although as discussed above, it is evident that the letter complained of was privileged, we nevertheless address the disengenous claim in both the complaint and amended complaint that appellee is a private figure, not a public official. The transparent purpose was to avoid having the letter fall within the qualified privilege of fair comment that requires a plaintiff to carry the overwhelming burden of establishing actual malice to overcome the privilege.[3] "[T]he constitutionally protected right to discuss, comment upon, criticize, and debate, indeed, the freedom to speak on any and all matters is extended not only to the organized media but to all persons." Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984). The First Amendment privilege of fair comment is not absolute. To prevail at trial, a plaintiff must establish not only the falsity of the claimed defamation, but also demonstrate through clear and convincing evidence that the defendant knew the statements were false or recklessly disregarded the truth. New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). See McDonald v. Smith, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (holding that Petition Clause does not require states to expand this privilege into an absolute one.) Reckless disregard is not measured by whether a reasonably prudent person would have published or would have investigated before publishing; the plaintiff must show the defendant "in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (emphasis added).
In Wilkinson v. Florida Adult Care Ass'n, Inc., 450 So.2d 1168, 1172 (Fla. 2d DCA 1984), rev. denied, 461 So.2d 114 (1985), the Second District explained that "public officials" generally are persons occupying upper level political or administrative positions who "affect[] government conduct, exercise[] independent authority, supervise[] lower level employees, and appear[] influential to the general public." By definition, "Director of animal control" is the "person designated by the county administrator to enforce the ordinances and laws pertaining to animal control and cruelty to animals." Leon County Code, § 4-26, art. II, chap. 4. The director thus is the chief enforcement officer for a division of county government and is authorized to enforce county and state law, and pursuant to this authority she and the officers whom she directs are empowered to, among others, enter private property, impound people's pets, and issue citations carrying civil penalties. Ch. 828, Fla. Stat. (1993); Leon County Code, Ch.2, Art. IV, (1992). Although appellee is not an elected public official, she most certainly is a public officer wielding a portion of the sovereign power of this state, and the qualified privilege of every citizen to criticize such a public officer applies in this instance. See Smith v. Russell, 456 So.2d 462 (Fla. 1984) (holding a police officer is a public official), cert. den., 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 782 (1985). In fact, even if appellee were not a public officer, the facts alleged in the complaint and in the amended complaint demonstrate *355 that she is a limited public figure and is therefore subject to the actual malice standard. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), Della-Donna v. Gore Newspapers Co., 489 So.2d 72, 77 (Fla. 4th DCA 1986), rev. den., 494 So.2d 1150, cert. den., 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987).
A second ground for our holding that attorney fees must be awarded lies in our finding that the letter in question contained an expression of pure opinion and is not actionable defamation. In Smith v. Taylor County Publishing Co., Inc., 443 So.2d 1042, 1047 (Fla. 1st DCA 1983), this court explained the privilege:
Pure expression of opinion exists when an article expressing an opinion is published and sets forth, in the article, the facts on which the opinion is based or when the parties to the communication are aware of the facts or assume their existence and the opinion is clearly based on those facts.
Mixed expression of opinion, however, is not constitutionally protected and exists when
a published statement containing an opinion is made and is not based on facts set forth in the article, or assumed facts and, therefore, implies the existence of some other undisclosed facts on which the opinion is based.
Id.
To determine whether a statement is actionable, the court must
examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

Id. (quoting from Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir.1980)) (emphasis added). The determination of whether a statement is one of opinion is a question of law. From v. Tallahassee Democrat, Inc., 400 So.2d 52, 57 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465.
In From, a newspaper column did not disclose all of the facts upon which the opinion expressed about From was based. Instead, From's "performance and position in the Tallahassee tennis community provide[d] the assumed facts upon which the author could base his opinion." From at 57. Just as the audience of the tennis column in the local paper would be expected to be aware both of the tennis pro's situation and his performance as a tennis pro in this community, the county commissioner who received appellant's letter would be expected to be aware of appellee's situation, especially since there had been such controversy surrounding the Max the Rottweiler matter. The letter in the instant case is privileged pure opinion and not defamatory. Thus, it is not actionable.
Finally, we address and readily dispose of the frivolous claim for injunctive relief in Count II of the complaint, i.e., the request that appellant be enjoined from "writing or otherwise making further defamatory statements" about appellee. It is a "well established rule that equity will not enjoin either an actual or a threatened defamation." United Sanitation Services, Inc. v. City of Tampa, 302 So.2d 435 (Fla.2d DCA 1974).
The order denying attorney's fees in this case is reversed, and the case is remanded for entry of a finding under section 57.105, Florida Statutes, and an award of attorney's fees to appellant.
BOOTH, MINER and MICKLE, JJ., concur.
NOTES
[1] The text of the letter to Commissioner Host follows:

"I am writing to you to express my outrage over the behavior of Ms. English, Leon County's Animal Control Director. For years she has tried to implement an inhumane policy of declaring all dogs of certain breeds, e.g. Rottweilers, German Shepherds, Dobermans, etc. to be aggressive and vicious animals, and therefore not permitted to live. As you are aware, this issue has come to a boiling point over a Rottweiler named Max, who has been incarcerated in the pound for a year and a half despite the fact that he has never bitten anyone or shown any other aggressive behavior either before or during his imprisonment. In fact, when he developed heartworms in the pound (due to his mistreatment there) Ms. English refused to allow him access to veterinary care, stating that she wished him to die (a long slow, agonizing death) of the heartworm infestation.
"In Max's recent court case, two Rottweiler experts have testified that Max shows no signs of aggression whatsoever, despite their pulling at his genitals and doing everything else they could think of to provoke him. In my opinion the man who sprayed Max repeatedly with wasp spray in order to shoot a videotape of him looking mean should be in jail for cruelty to animals, and Max, who certainly could have done him serious bodily harm, BUT DID NOT, has more than proved that he is not a vicious animal and deserves to be set free to return to his loving home.
"As proof of Ms. English's unreasonableness I urge you to visit the pound and see Max for yourself. Dogs are individuals, just as people are, some are vicious and some are not. A policy that declares them ALL to be aggressive is asinine and inhumane. I strongly urge you to replace Ms. English, Leon County's own Cruella DeVille, and appoint a caring, compassionate person to the post of Animal Control Director. I will watch your actions closely in this matter and await your reply."
[2] Although the complaint clearly alleges "express malice" twice, counsel for appellee erroneously cites the definition for actual malice.
[3] Although the complaint alleged express malice with an erroneous definition, the amended complaint alleges express and actual malice and correctly defines both terms.