707 So.2d 921 (1998)
Donna MORSE, Appellant,
v.
Kelly RIPKEN, Appellee.
No. 97-2002.
District Court of Appeal of Florida, Fourth District.
March 11, 1998.
Arthur M. Wolff of Law Offices of Arthur M. Wolff, Fort Lauderdale, for appellant.
Robert D. McIntosh and Cristina M. Pierson of Fleming, O'Bryan & Fleming, P.A., Fort Lauderdale, and Paul Mark Sandler of Freishstat & Sandler, Baltimore, MD, for appellee.
GROSS, Judge.
Donna Morse appeals an order dismissing with prejudice her defamation claim against Kelly Ripken.
Morse's suit concerned an article published in the magazine Ladies Home Journal. The article was based on an interview with Ripken and her husband, Cal Ripken, Jr., who is a professional baseball player. Before the article was written, he had broken the major league record for most consecutive games *922 played. In the article, Kelly describes her experiences during her marriage to Cal. The last several paragraphs contained the portion which Morse believed was defamatory:
The toughest part, they agree, are the fans who mob Cal wherever he goes. "They want to kiss him," says Kelly, making a face. "I hate that."
She glances again at her husband's photograph. "I don't look at him as a hero," she says thoughtfully. "I look at him as somebody who went out and did his job every day and didn't complain. He did it exceptionally well because he's talented. But to me, a hero is somebody who rescued a drowning child."
"Now," she adds, "I joke about Cal's accomplishment. It was a great thing he did, but what saves us is our sense of humor. I kid him and say, `I get to be with the all-American hero. Today I'm with God.'"
But honestly, says Kelly, perhaps the most telling quality about Cal is that "he's such a trusting soul."
Take the woman in Florida who agreed to rent her home to Ripken this year for spring training. "When Cal showed up, the woman was still in the house," Kelly says laughing. "She hadn't quite gotten around to leaving. I told Cal, `She was planning to spend the night with you!'"
She sighs at his naivete. "He hadn't even considered that possibility."
Morse contends that she was "the woman in Florida" referred to in the article. Morse's complaint alleged that the story's description of her was caused by Kelly Ripken's "dislike and hatred" of her. Morse claimed that the source of the animosity was a dispute regarding a lease between the Ripkens and Morse. The Ripkens had leased Morse's house during spring training in 1996, but abandoned the premises prior to the expiration of the lease term due to disagreements over' the condition of the property.
The issue in this case is whether the story contains statements of pure opinion, which are not actionable under the First Amendment. See From v. Tallahassee Democrat, Inc., 400 So.2d 52, 56 (Fla. 1st DCA 1981). The Supreme Court observed in Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) (footnote omitted):
Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas. But there is no constitutional value in false statements of fact.
The determination of whether a statement is fact or opinion is a question of law for the court, which an appellate court may determine on review. See Zambrano v. Devanesan, 484 So.2d 603, 606 (Fla. 4th DCA 1986). The distinction between fact and opinion is not always clear. The law draws a distinction between pure expressions of opinion, which are constitutionally protected, and mixed expressions of opinion, which are not. Id. The second district explained the difference between these concepts in Hay v. Independent Newspapers, Inc., 450 So.2d 293, 295 (Fla. 2d DCA 1984) (citation omitted);
Pure opinion is based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader or the listener as a member of the public. Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. Rather the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion.
See also Madsen v. Buie, 454 So.2d 727, 729 (Fla. 1st DCA 1984); From, 400 So.2d at 57. To determine whether a statement is actionable, the court must examine it in the context in which it was published. The court must
consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.
Demby v. English, 667 So.2d 350, 355 (Fla. 1st DCA 1995) (quoting Smith v. Taylor *923 County Pub. Co., Inc., 443 So.2d 1042, 1047 (Fla. 1st DCA 1983)); Keller v. Miami Herald Pub. Co., 778 F.2d 711, 717 (11th Cir. 1985).
In this case, the supposedly defamatory statement was that Morse, who was not named in the article, was "planning to spend the night" with Cal Ripken, Jr. All of the facts upon which Kelly Ripken based her opinion were conveyed to the reader of the article: fans mob Cal wherever he goes; fans want to kiss him; and Morse, the lessor of a home to the Ripkens, had failed to vacate it before Cal's arrival for spring training. Kelly Ripken's statement was pure opinion, nothing more than her commentary on the facts presented in the article. See Zambrano, 484 So.2d at 606. There was no implication in Kelly's reported statements that there were undisclosed facts which also formed the basis of her opinion. Cf. Eastern Air Lines, Inc. v. Gellert, 438 So.2d 923, 927 (Fla. 3d DCA 1983); Madsen, 454 So.2d at 729. The focus of the article was on her husband, and the narrative purpose of the anecdote involving "the woman in Florida" was to gently poke fun at Cal Ripken, Jr.'s naivete in dealing with the public. See Hay, 450 So.2d at 295. The narrative function of the statement signaled to readers that it was merely Kelly Ripken's opinion, one that might be drawn by an overprotective wife. The intent of the statement was to be humorous, and it did not invite serious examination of Morse's moral behavior. Nothing in the article suggests that there was any undisclosed defect in Morse's character, or anything else that she said or did, which would support the conclusion that she wanted to spend the night with Cal Ripken. From the facts stated in the article, a reader might easily arrive at a different opinionthat there was merely confusion over the date of the Ripkens' arrival at the Florida home.
The order of dismissal with prejudice is affirmed.
DELL, J., and OWEN, WILLIAM C., Senior Judge, concur.