334 So.2d 50 (1976)
PALM BEACH NEWSPAPERS, INC., a Florida Corporation, et al., Appellants,
v.
Lloyd F. EARLY, Appellee.
Nos. 75-116 and 74-1729.
District Court of Appeal of Florida, Fourth District.
April 23, 1976.
Rehearing Denied June 2, 1976.
Harold B. Wahl, of Wahl & Gabel, Jacksonville, Cecil H. Albury, of Brennan, McAliley, Albury & Hayskar, West Palm Beach, and John F. Law, North Palm Beach, for appellants.
Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, for appellee.
PER CURIAM.
Lloyd F. Early, the elected County Superintendent of Public Instruction of Palm *51 Beach County, brought an action for libel against Palm Beach Newspapers, Inc., the publisher of two daily newspapers, and certain members of the editorial and news staff of those two newspapers. A jury verdict awarded Early a total of $1,000,000 in compensatory and punitive damages, and from the judgment entered thereon the defendants have appealed. This is Case No. 74-1729. The trial had been delayed for nearly two years while defendants sought certiorari review of an order requiring the corporate defendant to disclose certain financial information. Defendants had posted a bond conditioned to pay all costs and damages occasioned by the delay. Subsequent to verdict and final judgment, plaintiff sought to recover on the bond asserting entitlement to two years' interest on the judgment as his damages for the delay. The postjudgment order denying plaintiff's motion and granting the defendants' motion to discharge the bond is the subject of an interlocutory appeal, Case No. 75-116. We affirm the latter order, and, for reasons hereafter set forth, reverse the judgment in Case No. 74-1729.
At all times material to this cause of action, Lloyd F. Early was a public official. The corporate defendant published two daily newspapers in Palm Beach County, the Palm Beach Post, a morning paper, and the Palm Beach Times, an evening paper. Defendants-Favre and Sawyer were editor and reporter respectively for the Post, defendants-Kirkpatrick and Arpe editor and reporter respectively for the Times. Both papers, through their respective editorial and news staffs, embarked upon a concerted campaign admittedly designed to bring about the removal of Mr. Early from his elected position. In pursuance of this objective, the defendants published over a period of approximately fourteen months several hundred news articles and editorials, all of which were generally hostile to or critical of Early and many of which were of a defamatory nature.
Although the defendant/appellants have raised a number of points on this appeal, we find merit only as to those relating to (1) the sufficiency of the evidence, (2) the correctness of certain jury instructions, and (3) the gross excessiveness of the verdict. However, because we conclude that the evidence is legally insufficient to sustain the verdict and the judgment entered thereon, we dispose of the case on that point alone, making it unnecessary to discuss the remaining meritorious points.
This case is governed squarely by New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny. In the New York Times case, the court defined a constitutional privilege intended to free criticism of public officials from the restraints imposed by the common law of defamation:
"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice'  that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
(376 U.S. at 279-80, 84 S.Ct. at 726)
This standard, applicable to appellee  Lloyd F. Early as a public officer, has been explicated in later cases. In Garrison v. Louisiana, 379 U.S. 64, it was said, at 74, 85 S.Ct. 209, at 216, 13 L.Ed.2d 125 (1964) "only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions." As stated in a footnote in Gertz v. Robert Welsh, Inc., 418 U.S. 323, footnote 6 at 334, 94 S.Ct. 2997, at 3004, 41 L.Ed.2d 789 (1974):
"In St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), the Court equated reckless disregard of the truth with subjective awareness of probable falsity: `There must be sufficient evidence to permit the conclusion that the defendant in fact entertained *52 serious doubts as to the truth of his publication.'"
Malice in the traditional common law sense of sinister or corrupt motive such as hatred, ill will, spite, enmity or a wanton desire to injure has been distinguished from actual malice as employed in the New York Times standard relating to a public official  knowledge of falsity or reckless disregard of the truth. See, Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967); Garrison v. Louisiana, supra; Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965); Rosenblatt v. Baer, 383 U.S. 75, 84, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler, 398 U.S. 6, 9-11, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). Additionally, it has been stated that those who hold governmental office may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth. Gertz v. Robert Welsh, Inc., supra, 418 U.S. at 342, 94 S.Ct. 2997.
The Gertz case, supra, also made clear that the defamatory falsehood referred to in the New York Times standard refers to a statement of fact as opposed to pure comment or opinion:
"We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." (418 U.S. at 339-40, 94 S.Ct. at 3007)
It thus appears that under the present state of the law concerning an action for libel by a public official, the plaintiff has the burden of showing by clear and convincing evidence that the defamatory statement was (1) a statement of fact, (2) which was false, and (3) made with "actual malice"  that is, with knowledge that it was false or with reckless disregard of whether it was false or not. We conclude from our examination of the briefs and those portions of the record to which our attention has been directed, that the plaintiff/appellee did not meet that burden as is illustrated by the following sampling of the various articles of which plaintiff complained.
Plaintiff/appellee complained that the defendants characterized his tenure in office as unsuccessful, and stated that he was unfit to hold the office of Superintendent of Public Instruction because of his ineptness, incompetence and indecisiveness. All of these charges were clearly matters of opinion, not statements of fact, and were proper subject of comment on a public official's fitness for office.
Plaintiff/appellee complained that defendants accused him of cheating and stealing from the public and that he had his "fingers in the pot." A charge of cheating or stealing, if false and made with knowledge of such falsity or with reckless disregard for the truth thereof, would certainly be beyond the constitutional privilege established by the New York Times standard. However, in proper context the statements which defendants actually made do not carry the implication suggested by plaintiff. The first article referred to an editorial in which the newspaper asserted that the public and the school board had been cheated by Mr. Early's lack of leadership, while the second article stated in an editorial that "Mr. Below sits on the sideline doing what he can when Mr. Early's fingers aren't in the pot"  implying, not thievery, but incompetent intervention in the operation of the school system. Taken in proper context, no reader of the newspaper articles could have thought that the newspaper was charging Early with the commission of any criminal offense. Cf. Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler, supra.
*53 Many of the written articles and cartoons, caustic and pejorative as they were, nonetheless had a basis in fact and thus were not false: defendants reported that the school board had stripped Mr. Early of his power (on that occasion plaintiff had been directed by a majority of the five-member school board to let the Deputy Superintendent, Mr. Below, run the system); defendants described plaintiff, a holder of two Masters Degrees in education, as a "former trucker" (but by Mr. Early's own admission he had at one time worked for a small trucking firm); defendants published an article stating that plaintiff had made improper use of an educational TV system by making a speech to school employees in which he defended himself against his critics (but such use was contrary to regulation and Mr. Early was criticized in this respect by some members of the school board and by the State Superintendent of Public Instruction); defendants reported that plaintiff planned to fire four hundred members of the instructional staff and a cartoon depicted plaintiff chopping off heads while surrounded by Lizzy Borden, Henry VIII, and Jack the Ripper (but this is more a matter of semantics since, at the school board meeting from which these matters originated, plaintiff had submitted a plan for cutting down by approximately four hundred the number of new teachers to be hired in the next year and at that meeting one of the school board members had himself suggested that the action compared with that of Lizzy Borden, Henry VIII and Jack the Ripper); defendants reported that plaintiff was seeking a position with the federal government (and in fact Mr. Early had submitted an application for such a position).
A series of articles accused plaintiff of nepotism. They dealt with employment of plaintiff's wife, a registered nurse, in the school system. She had been so employed before Mr. Early came to office and thus in this sense the charge was false. However the series of articles relative to this matter were based primarily on information furnished by the then chairman of the school board, who had told defendants that he assumed plaintiff had recommended his wife for the school position since he, the school board chairman, had been informed that the plaintiff's predecessor had not recommended Mrs. Early for her part-time job with the school system. There was no evidence to show that the defendants had accused plaintiff of nepotism with knowledge of the falsity of the charge or with a high degree of awareness of its probable falsity. There was, at the most, only proof of defendants' failure to investigate, which without more, cannot establish reckless disregard for the truth. Gertz v. Robert Welsh, Inc., supra, at 332, 94 S.Ct. 2997.
Most of the articles and cartoons would fall in the category of what the courts have chosen to call "rhetorical hyperbole" or "the conventional give and take in our economic and political controversies." In this category were statements to the effect that public confidence in the school system was eroding, that the public was clamoring for new leadership in the school system, that plaintiff enjoyed TV and news exposure, that plaintiff had not, prior to his election, held an administrative position in the school system higher than acting principal, and such cartoons as depicted the school buildings falling down or crumbling under plaintiff's leadership, as typical examples.
We do not here attempt to discuss or classify more than a smattering of the several hundred derogatory articles and cartoons which defendants published of and concerning plaintiff. Suffice it to say that while most of the articles and cartoons can fairly be described as slanted, mean, vicious, and substantially below the level of objectivity that one would expect of responsible journalism, there is no evidence called to our attention which clearly and convincingly demonstrates that a single one of the articles was a false statement of fact made with actual malice as defined in the New York Times case. We thus conclude *54 that the defendants' motion for a directed verdict at the close of the evidence should have been granted by the trial court. The judgment is therefore reversed and the cause remanded with directions to enter a judgment in favor of the defendants.
REVERSED and REMANDED.
WALDEN, C.J., OWEN, J., and STRAWN, DAVID U., Associate Judge, concur.