568 So.2d 454 (1990)
FLORIDA MEDICAL CENTER, INC., d/b/a Florida Medical Center, a Florida Corporation, Appellant,
v.
NEW YORK POST CO., INC., and Maxwell Newton, Appellees.
No. 88-3309.
District Court of Appeal of Florida, Fourth District.
September 12, 1990.
Rehearing and Rehearing Denied November 9, 1990.
*455 Joel S. Berman and Diane Marger Moore of Sherr, Tiballi, Fayne & Schneider, Fort Lauderdale, for appellant.
Robert L. Shevin of Stroock & Stroock & Lavan, Miami, for appellees.
Rehearing and Rehearing En Banc Denied November 9, 1990.
WARNER, Judge.
This is an appeal from an order dismissing with prejudice appellant's action for libel against appellees regarding the publication in the New York Post of an article concerning appellant. The issue presented is whether the article consists of actionable libel or is opinion protected by the First Amendment. Taking the well-pleaded allegations of the complaint as true for the purposes of ruling upon a motion to dismiss, we hold that the complaint stated a cause of action and reverse the order of the trial court.
On July 12, 1988, the appellee, New York Post Co., Inc., published a column written by appellee, Maxwell Newton. The column, titled "Patients: A Necessary Evil", appeared in the business section of the Post, a newspaper with a national circulation. It appeared on the same page as business news articles and some general stock market quotations from the previous day. The column focused on the writer's conclusions that the hospital administration's purpose was to "rob" insurance companies through their charges for substandard service to patients. At the end Appellee Newton identified Appellant by name as the hospital to which he referred in the article, which is hereinafter produced:
I recently had another experience with a major surgery case (not my own) in a Florida hospital.
I would conclude that the priorities for hospital administration produced by the insurance coverage system have become distorted.
The way the system works is for the doctors and the hospital administration to conspire, overtly, or by inference, to rob the insurance company. The patient does not necessarily benefit.
The principal safety valve is the personal idealism of individual doctors or of individual nurses. The system itself is inherently biased against the individual.
The way it works is there is no barrier from the working of the system itself to the number of tests, procedures or medication provided.
There is no limit here.
Nurses wander into wards taking tests on a routine basis.
Patients who are alert are able to advise nurses that certain tests have already been done; that the patient is leaving the hospital and does not require another blood test of the sort that was taken before surgery.
Intensive care is a major profit center.
Here the cost can be $3,000 a day.
So there is an incentive for the hospital administration to leave patients in intensive care for another day, wherever possible.
Disputes among nurses are frequent, with many protestations that individual nurses are being asked to "look after" more than their share of patients.
Something that truly stunned me was and is the incidence of gross obesity among the nursing staff.
On matters where there is no immediate profit return from insurance standards are very low. I refer to routine cleaning, quality of bed sheets, size of beds, size of rooms, cleaning of wards (a pervasive smell of urine is evident in many), quality of foods (a very high content of saturated *456 fat) and minimal provision of salads and fresh vegetables.
The profit priorities are evident in the very poor quality of the facilities in public rooms, where dirt and worn out furniture is widely in evidence.
There is a pervasive use of Asian, Latin and black labor in the hospital. Such labor is not necessarily inferior in performance, but one has the clear impression the hospital administration is cutting many corners in the quality of nursing staff and other labor provided.
This is in effect a "cost plus" system for all items that are recoverable from the insurance carrier and a "service minus" system for all items that do not yield high profit returns from the carrier.
"Full-line forcing" is another profit center. Patients are obliged to buy bed mattresses, pans, jugs, and other sundry items from the hospital. This is a requirement. It goes to the insurance carrier's bill.
The greatest attention is paid to the admitting process. Here the procedure can and does take up to 45 minutes, as the hospital nails down every item of the potential patient's coverage.
No doubt it is a shocking experience to come into contact with the United States hospital system.
It is a system driven by a wild profit priority that really does not [respond] to the welfare of the patient.
The patient who is the customer, has little or no say in what happens to him and is not the focus of the profit process.
The patient is a means to an end  the robbing of the insurance carrier.
So, in a very profound sense, the patient is a necessary evil, the key to the insurance carrier's pocket.
The hospital I refer to is the Florida Medical Center Hospital, Oakland Park Blvd., Fort Lauderdale.
After failing to obtain a retraction because the statements contained therein were false and defamatory, appellant filed suit for libel alleging that the statements made were motivated by actual malice in that Defendants knew or reasonably should have known that the article and the factual statements contained therein concerning plaintiff were false and untrue.
The dispute in this case comes down to whether the statements contained in the article are protected opinion or actionable statements of fact. In Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court stated:
Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in "uninhibited, robust, and wide-open" debate on public issues. New York Times Co. v. Sullivan, 376 U.S., [254] at 270 [84 S.Ct. 710 at 721, 11 L.Ed.2d 686 (1964)]. They belong to that category of utterances which "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 [62 S.Ct. 766, 769, 86 L.Ed. 1031] (1942).
Id., 418 U.S. at 339-40, 94 S.Ct. at 3007 (footnote omitted). This passage has been very recently re-addressed by the Supreme Court in Milkovich v. Lorain Journal Co., ___ U.S. ___, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In that case the court stated:
Read in context, though, the fair meaning of the passage is to equate the word "opinion" in the second sentence with the word "idea" in the first sentence. Under this view, the language was merely a reiteration of Justice Holmes' classic "marketplace of ideas" concept. See Abrams v. United States, 250 U.S. 616, 630 [40 S.Ct. 17, 63 L.Ed. 1173] (1919) (Holmes, J., dissenting) ("(T)he ultimate good desired is better reached by free trade in ideas . .. the best test of truth is the power of the thought to get itself *457 accepted in the competition of the market"). Thus we do not think this passage from Gertz was intended to create a wholesale defamation exemption for anything that might be labeled "opinion." See Cianci [v. New Times Publishing Co.], supra, [639 F.2d 54, 61 (CA 2 1980)], at 62, n. 10 (The "marketplace of ideas" origin of this passage "points strongly to the view that the `opinions' held to be constitutionally protected were the sort of thing that could be corrected by discussion"). Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of "opinion" may often imply an assertion of objective fact. If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel those implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words `I think.'" See Cianci, supra, at 64. It is worthy to note that at common law, even the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an expression of opinion." Restatement (Second) of Torts, supra, § 566 Comment a.
Milkovich, 110 S.Ct. at 2705-06.
The distinction between fact and non-actionable opinion is a question of law to be determined by the court and not an issue for the jury. Zambrano v. Devanesan, 484 So.2d 603 (Fla. 4th DCA 1986); From v. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982). See also Milkovich which states:
This Court has also determined "that in cases raising First Amendment issues ... an appellate court has an obligation to `make an independent examination of the whole record' in order to make sure that `the judgment does not constitute a forbidden intrusion on the field of free expression.'"
Milkovich, 110 S.Ct. at 2705. Courts have made varying attempts to distinguish between fact and opinion. This court has distinguished between "pure opinion", which is not actionable, and "mixed opinion", which is, by relying on Hay v. Independent Newspapers Inc., 450 So.2d 293 (Fla. 2d DCA 1984). In Hay the court stated:
There is a distinction between pure expression of opinion and mixed expression of opinion. Pure opinion is based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader or the listener as a member of the public. Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. From [400 So.2d 52]. Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion. Kotlikoff v. The Community News, [89 N.J. 62] 444 A.2d 1086 (N.J. 1982). Pure opinion is protected under the First Amendment, but mixed opinion is not. See From.

In determining whether an alleged libelous statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience *458 to which it was published. Information Control v. Genesis One Computer Corp., 611 F.2d 781 (9th Cir. 1980) cited with approval in From.

The Information Control test was also relied on by the First District in From v. Tallahassee Democrat, Inc., 400 So.2d 52, 57 (Fla. 1st DCA 1981).
Many of the cases in Florida have struggled with the opinion/fact dichotomy by analyzing, as in Hay and Zambrano, on the one hand, whether the writer sets forth the facts upon which the writer relies or whether the facts are readily known by the audience to whom the communication is directed, or, on the other hand, the writer implies the existence of an undisclosed set of defamatory facts which give credence to the opinion. This analysis is taken from Restatement (Second) of Torts § 566 which states:
A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion.
However, that rule does not relieve the writer from being subject to suit if the disclosed facts upon which he bases his opinion are defamatory and false, even though there is no suggestion or implication that the writer is relying on undisclosed facts. Cianci v. New Times Pub. Co., 639 F.2d 54, 65 (2d Cir.1980).
Milkovich now has rejected any "artificial dichotomy between `opinion' and fact." Milkovich, 110 S.Ct. at 2706. Instead the Court sets forth the following criteria to determine whether First Amendment protection is afforded.
Foremost, we think Hepps [Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)] stands for the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved. (footnote omitted) Thus, unlike the statement, "In my opinion Mayor Jones is a liar," the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," would not be actionable. Hepps ensures that a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection (footnote omitted). Next, the [Greenbelt Cooperative Publishing Ass'n v.] Bresler [398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970)]-[Old Dominion Branch No. 496, Nat. Ass'n of] Letter Carriers [418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)]-Falwell line of cases provide protection of statements that cannot "reasonably (be) interpreted as stating actual facts" about an individual. Falwell, 485 U.S., [46] at 50 [108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988)]. This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to the discourse of our Nation. See id., at 53-55 [108 S.Ct. at 880-82].
The New York Times-[Curtis Publishing Co. v.] Butts [388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)] and Gertz culpability requirements further ensure that debate on public issues remains "uninhibited, robust, and wide-open," New York Times, 376 U.S., at 270 [84 S.Ct., at 721.] Thus, where a statement of "opinion" on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth. Similarly, where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault as required by Gertz.

Milkovich, 110 S.Ct. at 2707. Thus, in the instant case assuming medical costs and insurance are a subject of public concern, which we concede they are, if the statements are capable of being proved false, they are not protected.
In analyzing this article on a motion to dismiss we must take as true all well-pled *459 allegations of the complaint. Other Place of Miami, Inc. v. City of Hialeah Gardens, 353 So.2d 861 (Fla. 3d DCA 1977). In its complaint appellant alleged that the factual statements contained in the article were false and published with actual malice or with reckless and wanton disregard as to their truth or falsity. Therefore we must proceed on the premise that any statements which we find have factual connotations are false.
We begin by examining the context of the article in which all of the allegedly defamatory statements were made. It is a business column entitled "Your Business" written in a New York newspaper about a Florida hospital. Situated as it was above other business news stories, the statements contained therein are more likely to be taken as fact by the reader than if the same article had appeared on the editorial page. See Ollman v. Evans, 750 F.2d 970 (1984). The article itself is written to a large degree in the first person, relating that this is "another" experience of the author with a Florida hospital. At the hearing on the motion to dismiss it was learned that Mr. Newton's wife had been a patient at Appellant's hospital, but that fact is not revealed in the article. Furthermore, the use of the term "another" implies the existence of at least two experiences with hospitals in Florida. It is not known whether both or all of these experiences were with appellant's hospital, and the reader must assume that the article is based on several visits to appellant's hospital. Furthermore, this column about a Florida hospital appears in a New York newspaper. Therefore, it cannot be assumed that the audience to whom it was published has any general knowledge of facts concerning this hospital, and from the context of the article we cannot assume that the statements "cannot reasonably (be) interpreted as stating actual facts" about the hospital. See Milkovich 110 S.Ct. at 2707.
While the author includes cautionary terms at the beginning of the column when he states, "I would conclude that the priorities for hospital administration produced by the insurance coverage system have become distorted," the remainder of the article contains no such equivocations to alert the reader that the statements made are merely opinion. Instead the author sets forth what appear to be specific factual observations about the hospital's service which clearly, if untrue, would damage its reputation. Sprovero v. Miller, 404 So.2d 793, 794 (Fla. 3d DCA 1961); Campbell v. Jacksonville Kennel Club, 66 So.2d 495 (Fla. 1953) (statements which attribute conduct or characteristics to a plaintiff which are clearly incompatible with its business are libelous per se). The import of the statements is that the hospital performs and charges for unnecessary tests and medications; that it makes major profits by leaving patients in intensive care an extra day whenever possible; that its facilities are dirty; and it provides unhealthy foods to its patients. These are statements which are provable as being true or false, and they are false according to appellant's complaint. They are also defamatory to the hospital's reputation. Therefore, we cannot conclude on a motion to dismiss that the appellant has failed to state a cause of action for libel with respect to these factual statements.
With respect to the statement that "the way the system works is for the doctors and the hospital administration to conspire, overtly or by inference, to rob the insurance company", we agree that in the context of the article it is not tantamount to an accusation that the hospital has committed the crime of robbery.[1] Nevertheless, when considered in the context of the article, there is no question that the article accuses the hospital of dishonesty in connection with its billing system and business. Thus, since it imputes conduct incompatible with the plaintiff's lawful business, it is actionable. Owner's Adjustment Bureau, Inc. v. Ott, 402 So.2d 466 *460 (Fla. 3d DCA 1981). Appellees cite Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50 (Fla. 4th DCA 1976), cert. denied, 354 So.2d 351 (Fla. 1977) as authority that this statement is not actionable. In Early this court held that a charge of "cheating" or "stealing from the public" leveled against the Palm Beach School Superintendent was not actionable because from the context of the article such references were intended to convey "not thievery but incompetent intervention in the operation of the school system." Early at 52. More apropos to this case is the statement by the court in Early that, "A charge of cheating or stealing, if false and made with knowledge of such falsity or with reckless disregard for the truth thereof, would certainly be beyond the constitutional privilege established by the New York Times standard." Early at 52. In the instant case the statements that the hospital is robbing the insurance company attributes to the hospital dishonesty in taking the insurance company's money through improper billing and other hospital procedures. This is also a statement subject to proof of truth or falsity. This comment was not directed by this article to the medical insurance system as a whole but specifically to appellant's hospital. Thus, if false, it is actionable. Milkovich.
We therefore reverse and remand for proceedings consistent with this opinion.
HERSEY, C.J., concurs.
GARRETT, J., dissents with opinion.
GARRETT, Judge, dissenting.
The article should be afforded First Amendment protection, although apparently written to vent Mr. Newton's personal "beef" with the hospital about his wife's bill.
In Milkovich v. Lorain Journal Co., ___ U.S. ___, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), a newspaper published an article which implied that a high school wrestling coach lied under oath at a judicial proceeding. The written words were "not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury. Nor [did] the general tenor of the article negate [that] impression... . [T]he connotation that the [coach] committed perjury [was] sufficiently factual to be susceptible of being proved true or false." Milkovich, 110 S.Ct. at 2694.
No reasonable reader would get the impression that Mr. Newton seriously maintained that the hospital committed the crime of robbery. "[E]ven the most careless reader must have perceived that the word [`rob'] was no more than rhetorical hyperbole, a vigorous epithet used" by the author to express his opinion of the hospital's billing practices. Greenbelt Cooperative Publishing Assn, Inc. v. Bresler, 398 U.S. 6, 14, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6, 14 (1970). The connotation that the hospital committed robbery was insufficient factually to be susceptible of being proven true or false.
I would hold that once a court determines that the overall connotation of a publication is not susceptible of being proven true or false then all other statements in the publication even though susceptible of being proven true or false that relate to such connotation cannot form the basis of a defamation action. Otherwise, Mr. Newton's statements, "The profit priorities are evident in the very poor quality of the facilities in public rooms, where dirt and worn furniture is widely in evidence" and, "Such labor is not necessarily inferior in performance, but one has the clear impression the hospital administration is cutting many corners in the quality of nursing staff and other labor provided" might be actionable, but his statements, "The way the system works is for the doctors and the hospital administration to conspire, overtly, or by inference, to rob the insurance company" and, "The patient is a means to an end  the robbing of the insurance carrier" would not be actionable.
At the least, upon remand the trial court should be allowed to review its decision in light of Milkovich and determine what portion of the publication, if any, is actionable.
NOTES
[1] Section 812.13(1), Florida Statutes, defines "Robbery" as "the taking of money or other property ... from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear."