PER CURIAM.
Frank L. Zorc appeals from a final judgment awarding William 0. Jordan compensatory and punitive damages in a libel and slander action. We reverse and remand for entry of a final judgment in favor of Frank L. Zorc.
William O. Jordan and Carole Jean Jordan, his wife, filed a Complaint against Frank L. Zorc (“appellant”).[1] In his Complaint, William Jordan (“appellee”) alleged the following: that he was and is a businessman and was a member of the City Commission and the Mayor of the City of Vero Beach; that he owned a parcel of land that the City wanted to acquire by eminent domain proceedings in order to widen a road, and that during the proceedings, appellee hired an appraiser to render an opinion as to the value of his property; that based on this appraiser’s evaluation, the City Commission voted to pay appellee $32,500; that appellant published and disseminated slanderous and libelous statements regarding appellee and his conduct during the appraisal of his property and the meetings held in relation thereto; and that appellant made false and defamatory statements that appellee illegally influenced his appraiser and the City of Vero Beach; through its counsel, to fraudulently obtain money and obstruct justice in legal proceedings.
Appellee attached five documents to his Complaint. He alleged that the following excerpts from those documents contained slanderous and libelous statements. The emphasis contained in the excerpts is from the original complaint and the attached documents:'
“And when an owner such as Jordan influences his appraiser to change his professional value to recite a value nearly 500% larger than two M.A.I. ap-. praisals, the system is broke. Why not have each party just name their own valué? Why even use an appraiser? ... Jordan’s actions were at least unethical and perhaps illegal for a elected official trying to influence other elected officials while aborting the system of fairness and justice. I intend to object to the amount the City voted to pay Mr. Jordan at the secret meeting. YES, that closed to the public meeting needs full: Re examining and Re discussion before they make a ‘£TEW legal decision’ what to pay, at a proper OPEN PUBLIC MEETING.”
“Question — for Mr. Jordan: ‘Considering, the long time ‘Jordan Political Stature ’, certainly such a figurehead should know the Sunshine Law does not permit a secret meeting to take final action and pay $32,500.00! WHY did you take this money? You should have called for ‘An Open Public Meeting’. I think you were ‘overpaid’, wrongly paid, and wrongly accepted tax money for *770 your land approved in secret. Our constitutional rights were taken from us. A complete new ‘Open to The Public’ discussion must be held. You may owe a refund to us.”
“It now further appears: That an elected official Councilman Bill Jordan of the City of Vero Beach may have committed acts of malfeasance and or misfeasance, and or obstructing the normal plan of justice for the protection of the taxpayers, by a fraudulent attempt to modify normal professional property appraisals that are obtained to protect the public, by imposing his personal value conviction upon a State of Florida licensed property appraiser, and then ‘asking that appraiser’ to inflate the value of Mr. Jordan’s ‘own ’ real estate land the City was acquiring. His purpose appears to have been to discredit and reject two M.A.I. appraisers value factors. This was to gain Mr. Jordan incredibly far more money from the City and Taxpayers than the two other professional M.A.I. appraisers valued the land. Furthermore, Council final actions on this matter were taken at an apparently improper illegal closed secret meeting.”
At trial, appellee testified that the appraisal amounts stated in the documents were true and that two M.A.I. appraisers appraised his property at $11,900 and $9,500. He also testified that Mr. Kmetz, who appraised the property at $34,000, using appellee’s own personal figure of $50,000, was not an M.A.I. appraiser. Appellant’s counsel questioned appellee concerning the information contained in the documents:
Q. We have two documents, Exhibit A and B, that Mr. Zorc attached to this complaint that renders his opinion. You have said that the appraisal of Armfield, $11,900, that’s accurate, the nine-five is accurate. Kmetz’ report of the $50,000 and $34,000. You have already said that we have a transcript that he attached where Kmetz put the $50,000 at your request, and then isn’t it true is that what Mr. Zorc did, he simply took that information and he shared it with the reader, and he rendered an opinion about what went on there; isn’t that true?
A. For about the 15,000th time, I guess he did that.
Appellant’s counsel further asked appellee whether the reader could “look at [the documents] and ... say I don’t think there is enough information to draw a conclusion one way or another?” Appellee responded, “I suppose so.”
During appellee’s case, at least five witnesses testified that there were no Sunshine Law violations in the City’s actions concerning appellee’s property. However, appellant' correctly points out that after the entry of the verdict and judgment in the case sub judice, the trial court entered an order in a pending action (lower court case number 97-0401) in which appellant challenged the validity of the meetings where the Commission voted to pay appel-lee $32,500. The trial court entered a Partial Summary Judgment in that case, citing to this court’s opinion of Zorc v. City of Vero Beach, 722 So.2d 891 (Fla. 4th DCA 1998), rev. denied, 735 So.2d 1284 (Fla.1999),[2] and declared the meetings in violation of the Sunshine Law.
Appellant testified that for the past forty years, he has been a member of the Indian River County Tax Payers Association, a watch dog group that makes sure “taxes are not unwisely used or foolishly spent.” He said that he only learned about appellee’s actions and the closed meetings involving the purchase of appel-lee’s property when he researched the minutes of the City Commission in preparation for a case involving his airport property. He stated that he consulted with no *771 less than ten attorneys, and in their opinion, he was correct that a Sunshine Law violation occurred as a result of the closed meetings. His research revealed that the City took a strip of property from the homeowners located on 10th Avenue, including appellee’s rental property, in order to widen the street and make a sidewalk. He testified that he discovered that the City paid each homeowner approximately $10,000, yet paid Jordan $82,500. He distributed the five documents referenced in appellee’s Complaint, all packaged together as one unit, to approximately twenty to twenty-five people he considered interested parties. He testified that he used the words “apparently” and “appears” because it was his opinion until the matter was resolved in court. He also stated that he made statements in the documents that he believed to be true and that he stopped writing and publishing about appellee after he was no longer an elected official.
The jury returned a verdict in favor of appellee and awarded $1.8 million in compensatory damages and $2.9 million in punitive damages. Appellant raises five issues on appeal. We need only address his contention that the trial court erred in fading to enter a directed verdict in his favor based on New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny.
In libel and slander actions brought by a public official,
the scope of review on appeal is highly unusual and essentially does away with the notion that the appellate court will defer- to the factfinder’s application of law to facts ... [Instead], an appellate court is required to conduct its own independent review of the evidence and determine for itself whether the evidence is sufficient to meet the exacting requirements of the First Amendment.
Seropian v. Forman, 652 So.2d 490, 494 (Fla. 4th DCA 1995); see also Harte-Hanks Communications, Inc. v. Con-naughton, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989).
For a public official to recover in a libel and slander action, he must prove, through clear and convincing evidence, that a defamatory falsehood relating to his official conduct was made with “actual malice,” that is, “with knowledge that it was false or with reckless disregard of whether it was false or nót.” New York Times, 376 U.S. at 279-80, 84 S.Ct. 710; see also Seropian, 652 So.2d at 494. “A false statement of fact is absolutely necessary if there is to be recovery in a defamation action.” Friedgood v. Peters Publ’g Co., 521 So.2d 236, 242 (Fla. 4th DCA), rev. denied, 531 So.2d 1353 (Fla.1988), cert. denied, 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989). The allegedly defamatory words must be read in the context of the entire publication, and if the documents could not possibly have a defamatory effect, the complaint may be dismissed or a directed verdict granted. Id.
It thus appears that under the present state of the law concerning an action for libel by a public official, the plaintiff has the burden of showing by clear and convincing evidence that the defamatory statement was (1) a statement of fact, (2) which was false, and (3) made with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
Palm Beach Newspapers, Inc. v. Early, 334 So.2d 50, 52 (Fla. 4th DCA 1976), cert. denied, 354 So.2d 351 (Fla.1977), cert. denied, 439 U.S. 910, 99 S.Ct. 277, 58 L.Ed.2d 255 (1978).
In Seropian v. Forman, 652 So.2d 490 (Fla. 4th DCA 1995), there was a controversy over whether a nationally known, out-of-state, medical clinic (Cleveland Clinic) could open a new hospital near Fort Lauderdale. When the Clinic applied to the State Department of Health and Rehabilitative Services (HRS) for a certificate of need[3] (CON) to operate a 400-bed hos *772 pital in the area, the wisdom of allowing this new health care provider competition became the subject of a public debate that “took place in a public forum in the context of a statutorily formalized, political administrative process.” Id. at 491.
The gist of plaintiffs defamatory falsehood claim was that defendant accused him of “influence peddling.” Id. at 493. Explaining why the evidence was insufficient, the court stated,
Similarly, no reader of these letters could seriously have believed that plaintiff was being charged with receiving a bribe of “unlawful compensation” to endorse the Clime’s position.... Thus, even assuming that the term influence peddler was directed to plaintiff, it could only have been reasonably understood to be “rhetorical hyperbole, a vigorous epithet,” used by a doctor and chief of staff who thought those arguments “extremely unreasonable.”
Quite apart from the legal construction of the term influence peddling, we can find absolutely no evidence of knowing falsity or reckless disregard of the truth.
Id. at 496. Consequently, this court reversed the judgment in favor of the plaintiff on the issue of liability and remanded for entry of judgment in favor of the defendant. Id. at 498; compare Cape Publications, Inc. v. Adams, 336 So.2d 1197 (Fla. 4th DCA 1976).
Here, appellee failed to meet the clear and convincing standard for recovery by a public official for libel and slander. Appellee had the burden to prove that appellant’s statements were statements of fact, his statements were false, and his statements were made with actual malice. Early, 334 So.2d at 52. Appellee admitted “that what Mr. Zorc did, he simply took [the] information [concerning the eminent domain proceedings], and he shared it with the reader, and rendered an opinion about what went on there.” Thus, by his own testimony, appellee acknowledged that appellant’s comments concerning the propriety of his conduct constituted opinions rather than facts. See Hay v. Independent Newspapers, Inc., 450 So.2d 293, 295 (Fla. 2d DCA 1984).
Furthermore, the documents attached to the Complaint contained statements that the closed meetings violated the Sunshine Law and that at those meetings it was decided that appellee would be paid $32,500 for his strip of property, a substantially greater sum than that received by other property owners. The documents also urged readers to examine the alleged violations themselves and called for an open meeting. The testimony at trial and subsequent court proceedings confirmed the accuracy of those facts. Therefore, appellee failed to meet the burden of proving that the statements of fact were false.
In conclusion, we hold that the allegedly defamatory statements were opinions based upon the facts set forth in the documents, which were true. We also hold that appellee did not prove that the facts upon which the opinions were based were false or that appellant’s assessment of them was erroneous. Therefore, the trial court should have entered a directed verdict in favor of appellant. Harte-Hanks, 491 U.S. at 666 n. 7, 109 S.Ct. 2678. See New York Times, 376 U.S. at 254, 84 S.Ct. 710; see also Seropian, 652 So.2d 490; Scandinavian World Cruises v. Ergle, 525 So.2d 1012 (Fla. 4th DCA 1988); Friedgood, 521 So.2d at 242; Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Having concluded that the statements were opinions based on facts that were not false, we do not need to reach the issue of malice.[4]
*773 Accordingly, we reverse the final judgment in favor of appellee and remand with instructions to enter judgment in favor of appellant, Frank L. Zorc.
REVERSED and REMANDED.
WARNER, C.J., DELL and GUNTHER, JJ., concur.

. The trial court entered Final Summary Judgment in favor of Frank L. Zorc as to Carole Jean Jordan's claim. Carol Jean Jordan appealed, and this court per curiam affirmed the trial court's judgment. Jordan v. Zorc, 727 So.2d 940 (Fla. 4th DCA 1998).

. In Zorc v. City of Vero Beach, 722 So.2d 891 (Fla. 4th DCA 1998), rev. denied, 735 So.2d 1284 (Fla.1999), this court concluded that closed-door meetings concerning Zorc’s airport property violated section 286.011(1), Florida Statutes (1995), the "Sunshine Law.”

. "State law [ ] bars the issuance of a license for the operation of any specified health care *772 facility, which by definition includes hospitals, unless the provider or facility first obtains a 'certificate of need.’ ” Seropian v. Forman, 652 So.2d 490, 491 (Fla. 4th DCA 1995)(quoting § 381.704(2), Fla. Stat. (1987)).

. Nevertheless, we note that the record does not contain clear and convincing evidence of malice. See Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Palm *773 Beach Newspapers, Inc. v. Early, 334 So.2d 50, 53-54 (Fla. 4th DCA 1976), cert. denied, 354 So.2d 351 (Fla.1977), cert. denied, 439 U.S. 910, 99 S.Ct. 277, 58 L.Ed.2d 255 (1978).