763 So.2d 1063 (1999)
McCAW CELLULAR COMMUNICATIONS OF FLORIDA, INC., a Washington corporation, d/b/a AT & T Wireless Services, Appellant,
v.
Roger P. KWIATEK, Jr., Appellee.
No. 98-2063.
District Court of Appeal of Florida, Fourth District.
July 28, 1999.
*1064 Steven M. Katzman, Lisa S. Taylor, and Benjamin P. Brown of Tew Cardenas Rebak Kellogg Lehman DeMaria & Tague, L.L.P., West Palm Beach, for appellant.
Scott Warfman and Margaret Brodsky, Miami, for appellee.
POLEN, J.
McCaw Cellular Communications of Florida, Inc., a Washington corporation, d/b/a AT & T Wireless Services ("McCaw") timely appeals a judgment on a jury award to Roger Kwiatek of $1.3 million, based on Kwiatek's claims of handicap discrimination. Kwiatek, an HIV-positive individual, cross-appeals on the issue of the $100,000.00 cap on punitive damages. Of the three points McCaw raises on appeal, we reverse on one. We hold that McCaw was entitled to a directed verdict because Kwiatek failed to establish that he suffered any adverse employment action. We reverse the final judgment, which renders moot the other points raised by McCaw, and, in addition, makes it unnecessary for us to address Kwiatek's claim on cross-appeal.

Facts
McCaw hired Kwiatek as a customer care representative in 1989. In August, 1990, Kwiatek was diagnosed as HIV-positive. He did not disclose his condition to his employer until August, 1993.
Although his reviews were generally favorable, beginning in September, 1991 his employers noted that Kwiatek's work performance, at times, fell below expectations in that he socialized excessively, failed to report to work as assigned, and was often tardy. In 1992, they cautioned him that these performance deficiencies could result in his termination if not improved.
In August, 1993, his supervisor requested that he provide medical documentation explaining his frequent absences from work. On August 17, 1993, he provided her with notes from his doctors explaining his HIV status. Both doctors opined that his condition would require continued absences in the future.
The next day, two of McCaw's managers met with Kwiatek to discuss his absenteeism. McCaw requested that Kwiatek limit his absences to avoid scheduling difficulties and difficulties filling his role when he was gone, and that he inform McCaw, if possible, when he would be absent from work due to a doctor's appointment. In addition, McCaw agreed to accommodate Kwiatek's schedule insofar as it would allow him to work either weekends or evenings to make up for the time he had to take off for appointments. However, it noted that if Kwiatek did not provide advance notice of such appointments, he would not be permitted to make up the time in his sick leave bank. Kwiatek agreed to these requests and accommodations, and even testified that same were "reasonable."
Apparently, Kwiatek was late in his daily assignments. On December 10, 1993, his supervisor devised a plan to address this concern and told him she expected to see improvement from him within ten days. On December 21, 1993, she felt he did not improve and placed him on a "Personal Improvement Plan" to help him get back on track. Kwiatek agreed to these plans in writing and agreed to meet the objectives contained therein.
In May, 1994, Kwiatek requested a shortened work week from his supervisor. After initially denying his request, the supervisor, after Kwiatek persisted, eventually granted same.
Kwiatek continued to complete his assignments late. On November 11, 1994, two managers met with Kwiatek to discuss his continued deficiency in this regard. One of the managers informed him that he could continue in his position if he fulfilled *1065 the goals as set forth in his plan or, alternatively, apply for long-term disability benefits if he thought he could not complete his assignments. He cautioned Kwiatek that if he stayed at his job and did not fulfill his goals, he could face termination.
Kwiatek took some approved time off to mull over his options. During this time, McCaw placed an advertisement in the newspaper for part-time help in Kwiatek's department. On November 29, 1994, he returned to work, at which time he informed the two managers and his supervisor that he chose to remain at McCaw. One of the managers asked if McCaw could make any additional accommodations for Kwiatek, but Kwiatek declined. Kwiatek claimed that any discrimination he allegedly had suffered in the past ceased by this time.
In December, 1994, Kwiatek filed a complaint with the Florida Commission on Human Relations (FCHR) and the Equal Employment Opportunity Commission (EEOC). Thereafter, McCaw ordered Kwiatek's supervisor to refrain from counseling Kwiatek about his work performance in the future.
In May, 1995, Kwiatek was granted a one-month leave of absence. On October 13, 1995, he filed a suit under the Florida Civil Rights Act of 1992 (FCRA) against McCaw alleging it had discriminated against him in violation of Florida Statutes, § 760.10, Fla. Stat. (1993). At this time, he was still employed at McCaw. In November, 1995, he was granted another leave, during which time he applied for long-term disability benefits. His application was subsequently granted.
On November 3, 1995, he filed an amended complaint alleging the following instances of discrimination by McCaw: 1) requiring him in August, 1993 to provide medical documentation to explain his frequent absenteeism; 2) delaying his request for a shortened work week; 3) criticizing his job performance and counseling him accordingly; 4) giving him the option of improving his performance or applying for disability benefits; and 5) placing an advertisement in the newspaper for part-time help while he was on leave to consider his options in November, 1994.
The case was tried over eight days. At the close of Kwiatek's case-in-chief, McCaw moved for a directed verdict. It argued that Kwiatek failed to prove that he was subjected to adverse employment action. It also moved to strike any claims for back pay, front pay, or punitive damages. The trial court reserved ruling on these motions. At the close of the evidence, McCaw renewed its motions, which the court denied.
The jury awarded Kwiatek $1,305,000 in damages, apportioned as follows: $72,000 in back wages and out-of-pocket psychological damages; $108,000 in front pay; $125,000 for emotional distress; and $1 million in punitive damages. Thereafter, McCaw filed a motion for judgment as a matter of law, or alternatively for a new trial and/or remittitur. The court granted its motion in part by reducing the jury's punitive damages award by $900,000 and its combined back pay and medical expenses award by $23,000, resulting in a judgment for $382,000.00. This appeal followed.

Merits
Courts construe the FCRA in conformity with the federal American with Disabilities Act (ADA). Greene v. Seminole Elec. Co-op., Inc., 701 So.2d 646, 648 (Fla. 5th DCA 1997). The ADA provides that a "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job. 42 U.S.C.A. § 12111(8).[1] If a qualified individual with a disability can perform the essential functions of the job with reasonable accommodation, then the employer is required to provide the accommodation unless doing so *1066 would constitute an undue hardship for the employer. 42 U.S.C.A. § 12112(b)(5)(A). Reasonable accommodations to the employee may include, but are not limited to, additional unpaid leave, job restructuring, a modified work schedule, or reassignment. 42 U.S.C.A. § 12112(9)(B).
Federal courts and at least one Florida court have held that harassment is actionable under the ADA and have analyzed such cases in accord with Title VII hostile work environment cases. Greene, 701 So.2d at 648 (citing Rodriguez v. Loctite Puerto Rico, Inc., 967 F.Supp. 653 (D.P.R.1997)). Thus, a claim for harassment based on disability, like one under Title VII, requires a showing that: (1) the employee is a qualified individual with a disability under the ADA; (2) he or she was subject to unwelcome harassment; (3) the harassment was based on his or her disability; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his or her employment and to create an abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir.1998).
To prove an "abusive work environment," the plaintiff must show that the working environment was objectively hostile or abusive, and also that the plaintiff subjectively perceived it as hostile or abusive. Harris, 510 U.S. at 22, 114 S.Ct. 367. In determining whether such an environment is hostile or abusive, the court must consider the frequency of the discriminatory conduct; its severity; whether it was physically threatening, humiliating, or just a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. Id. 510 U.S. at 23, 114 S.Ct. 367.
We hold that the actions Kwiatek alleged were discriminatory do not pass muster under Harris. The record reflects that McCaw made several accommodations, accompanied by certain quid-pro-quo requests, to Kwiatek once it learned that Kwiatek's HIV condition could require continual absences. Although Kwiatek argues that he felt he was generally treated differently than other employees with chronic and debilitating medical conditions, he presented no objective evidence of an abusive or hostile work environment. Moreover, there was no evidence that McCaw's requests unreasonably interfered with his job performance, nor that the terms or conditions of Kwiatek's employment materially changed as a result of its actions. As such, his claim must fail. See, e.g., Chisholm v. Foothill Capital Corp., 3 F.Supp.2d 925, 938-39 (N.D.Ill.1998) (holding a mere warning that termination is possible does not per se constitute adverse employment action); Speer v. Rand McNally & Co., 123 F.3d 658, 664 (7th Cir.1997) ("a poor evaluation alone, even if undeserved, is not an adverse action for purposes of Title VII"); Henriquez v. Times Herald Record, No. 97 CIV. 6176(SHS), 1997 WL 732444 at *6 (S.D.N.Y. Nov.25, 1997) (holding that counseling sessions and written criticisms of employee's work performance did not fall within the types of materially adverse employment actions), affirmed, 165 F.3d 14 (2d Cir.1998); Khan v. Cook County, No. 96 C 1113, 1997 WL 370199 at *9 (N.D.Ill. June 27, 1997) (holding employer's initial refusal to accommodate employee's medical restrictions insufficient to establish adverse employment action).
Nevertheless, Kwiatek maintains that he was "constructively discharged." To establish constructive discharge, the employee must demonstrate, under an objective standard, that the employer, by its illegal discriminatory acts, made working conditions so difficult that a reasonable person in his or her position would feel compelled to resign. Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir.1989). This argument, however, *1067 also fails because Kwiatek never pled nor raised it at trial.
In sum, we hold that the court should have directed a verdict in McCaw's favor at the close of Kwiatek's case-in-chief. Accordingly, we reverse the judgment under review.
REVERSED.
DELL and FARMER, JJ., concur.
NOTES
[1] It is undisputed that Kwiatek is such a qualified individual.