804 So.2d 422 (2001)
Marcia Fischer WEBB, Appellant,
v.
FLORIDA HEALTH CARE MANAGEMENT CORPORATION, a Florida Corporation, Podihealth, Inc., a Florida Corporation, George I. Pollack, Charles Pollack, Theodore M. Duay, III, Greenwood Rehabilitation Center, a Florida Limited Partnership, Ocean Plaza Associates, d/b/a Ocean Plaza Retirement Residence, a Florida Limited Partnership, Golden Isles Convalescent Center, Inc., d/b/a Hallandale Rehabilitation Center, a Florida Corporation, and Eason Investment Company, d/b/a Eason Nursing and Rehabilitation Center, a Florida General Partnership., Appellees.
No. 4D00-3739.
District Court of Appeal of Florida, Fourth District.
October 10, 2001.
Rehearing Denied December 4, 2001.
*423 James W. Beasley, Jr. and Robert J. Hauser of Beasley, Leacock & Hauser, P.A., West Palm Beach, for appellant.
Stuart R. Michelson of the Law Office of Stuart R. Michelson, Bay Harbor Islands, for appellees.
KLEIN, J.
Appellant plaintiff sued appellee, her employer, charging employment discrimination connected with her maternity leave of absence. She alleged violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e et seq.), the Family and Medical Leave Act of 1993 (29 U.S.C. § 2614(a)(1)), and section 760, Florida Statutes (1997). The Florida Statute is Florida's equivalent of Title VII. The trial court granted defendant's motion for summary judgment, and we affirm.
Plaintiff was first employed by defendants in 1995 as one of four senior executives. She had her own office at company headquarters in Dania, Florida. In September 1997 plaintiff advised defendants that she was pregnant. She testified that shortly thereafter, in her annual performance review, she was told that she was making too much money.
In anticipation of her maternity leave, Mrs. Pollack, the wife of one of the owners of the company, began working with plaintiff to learn the responsibilities of the position and carry them out while plaintiff was absent. She worked with plaintiff parttime for about three months and full-time when plaintiff left in early March on maternity leave.
Initially plaintiff continued to work from her home with her laptop computer, but on March 12, Mr. Pollack came to her home and took her computer and company credit cards. He also informed her that the company did not pay for maternity leave. On March 19, after her child was born, plaintiff sent a letter, which did not contain any complaints, stating that she intended to return to work on June 8.
On May 28, plaintiff went to the office to speak with Pollack about her return on June 8, and he said that he would understand if she did not want to come back to work because her priorities might have changed. She testified that when she asked Pollack if he wanted her to come back he responded "you have to do what's right for you." Pollack's wife, who was working in plaintiff's former office, said to plaintiff "this is my office now, okay?"
When plaintiff asked Pollack where she was going to be working, he responded that they would "figure something out" and she "could look for a pay cut down the road."
On June 8, when plaintiff returned to work, she was asked to meet Pollack and another executive at one of the nursing homes the company managed. At this meeting Pollack advised plaintiff that she was going to be needed as a marketing representative, not as a vice-president of marketing and provider relationships, her former position. She believed she was being demoted to a different, subordinate, non-managerial position. Pollack advised her that she would not have an office at corporate headquarters, but would be working from her car using a cell phone. On the same day as these events occurred, plaintiff left her employment and delivered *424 a letter stating that she believed she had been fired.
On June 11 Pollack wrote the plaintiff a letter stating:
We want you to continue in your capacity as Vice President of Marketing and Provider Relations.... I urge you not to quit and instead to meet and discuss your issues with me.... I wish to stress again that all issues are open to discussion and I hope you will contact me to set up a meeting and reconsider your decision to leave your employment.
Plaintiff did not respond to that letter and did not return to work.
Plaintiff filed this suit, alleging actual discharge, constructive discharge and adverse action under the above statutes. Defendants moved for summary judgment, relying on, among other things, plaintiffs testimony admitting that no one had told her that her job title would be changed, that her salary had not been changed, and that the discussion about her bonus was that it would be reevaluated. Defendants also relied on the fact that when plaintiff left her employment on June 8 she had given defendants no opportunity to remedy whatever her complaints might have been. The trial court entered summary judgment in favor of the defendants, and plaintiff appeals.
We first address plaintiffs claims that the trial court erred in regard to her claims for actual discharge or in the alternative, if she was not discharged, that she suffered adverse action. Plaintiff devotes no more than two pages of her brief to argue both of those issues, and has cited no authority which would support those claims. Mindful that the courts must draw all inferences in favor of a party against whom a motion for summary judgment is made, and that the burden to prove the nonexistence of a material fact is on the moving party, we conclude that the defendants were entitled to summary judgment on actual discharge and adverse conditions, and that these claims do not merit discussion.
In order to prevail on a constructive discharge claim, an employee must show, under an objective standard, that the employer made working conditions so difficult that a reasonable person would feel compelled to resign. Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir.1989); McCaw Cellular Communications of Fla., Inc. v. Kwiatek, 763 So.2d 1063, 1066 (Fla. 4th DCA 1999).
In Diamond v. T. Rowe Price Associates, Inc., 852 F.Supp. 372 (D.Md.1994), the claimant's management authority had been reduced by her employer; however, her base salary had not changed and none of her superiors had been hostile, abusive or discourteous in any way. Observing that even the claimant conceded that she still had a position at the firm, the court granted the employer's motion for summary judgment. The facts in Diamond are strikingly similar to the facts in this case.
In addition, the Diamond court pointed out that an employer must be given an opportunity to remedy the complaints of an employee before an employee can prevail on a constructive discharge claim. In Diamond, as in the present case, the employee left without giving the employer an opportunity to address the employee's complaints. See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536 (11th Cir.1987); Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752 (11th Cir.1996).
In the present case plaintiff, by not starting back to work, made it impossible for her to prove a constructive discharge case. She foreclosed the possibility of presenting concrete evidence of intolerable working conditions. Serrano-Cruz v. DFI *425 Puerto Rico, Inc., 109 F.3d 23 (1st Cir.1997)(affirming a summary judgment). We conclude that, giving plaintiff the benefit of all inferences, there was as a matter of law no constructive discharge. We therefore affirm the summary judgment.
SHAHOOD, J., and SILVERMAN, SCOTT J., Associate Judge, concur.