837 So.2d 437 (2002)
Donna RAZNER, Appellant,
v.
WELLINGTON REGIONAL MEDICAL CENTER, INC., a Florida corporation; Christy Simmers; and Pam Thomas, Appellees.
Nos. 4D01-1849, 4D01-2450.
District Court of Appeal of Florida, Fourth District.
November 20, 2002.
Rehearing Denied February 25, 2003.
*438 Isidro M. Garcia of Garcia, Elkins & Boehringer, P.A., West Palm Beach, for appellant.
*439 Nancy W. Gregoire and Matthew D. Klein of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, for appellees.
STONE, J.
Razner appeals a final summary judgment entered in favor of Wellington Regional Medical Center, Inc. (Wellington), Christy Simmers, and Pam Thomas, individually, on Razner's claims of employment discrimination and defamation. Although Razner voluntarily left her employment, she claims she was constructively discharged because her employer and immediate supervisor perceived her as an alcoholic and treated her accordingly. The defamation claim arose from statements made by Simmers and Thomas in response to reports that Razner was intoxicated at work. We affirm.
Razner began working at Wellington in 1988 as an ultrasound sonographer. Simmers became her supervisor in 1993, and their relationship deteriorated quickly. Between 1995 and 1996, at a meeting to discuss Simmers' policy of cutting the amount of guaranteed overtime, Razner and Simmers engaged in a heated dispute. Simmers refused to change her policy and warned Razner that she did not want to make an enemy of her. Razner acknowledges that this meeting had nothing to do with an alcohol test she was required to take in 1997.
The first time Simmers mentioned anything about alcohol was in March 1997, when she reprimanded Razner after a nurse in the emergency room reported that Razner's breath smelled of alcohol and her speech was slurred. Although she denied being impaired, Razner admitted to having had an alcoholic drink while she was on-call that evening. Simmers warned her that the next time she was suspected of being under the influence of alcohol at work, she would have to take a blood test. Wellington's hospital policies and procedures mandate that a drug or alcohol test be given when there is "reasonable suspicion" someone appears or smells intoxicated on the job. The person who receives the results and the managers are authorized to disclose the information on a "need-to-know" basis.
Three months later, in July of 1997, Razner was again accused of being intoxicated on the job. This time, Thomas, who was filling in for Simmers, asked Razner to take a blood alcohol test. Razner returned to work but was told she had been placed on paid administrative leave pending the results of the test. In the meantime, Thomas asked Jeanne Englishby to cover Razner's shift for that day. Englishby asked why Razner could not take the shift and Thomas told her Razner was on leave pending the results of the blood alcohol test because she had "appeared intoxicated." When Englishby called Razner, Razner told her what had happened.
Englishby also called Simmers to find out if she could be relieved from covering Razner's weekend shift. In explaining why she was being asked to fill in, Simmers revealed that Razner had "appeared intoxicated" and was "under suspicion of being intoxicated when she came to work." Simmers also told Englishby that "they had given her a blood alcohol test."
The following day, when it was confirmed that the results of the blood test were negative, Razner was asked to resume her weekend shift. Although there is evidence that no other employee had been given a blood test under these circumstances, there is also no evidence that there were others who had been reported for suspected alcohol or drug use.
Joan Jones, the nursing supervisor, asked Englishby if she would sign a piece *440 of paper stating that she also smelled alcohol on Razner's breath, but Englishby refused to sign. The next day, Simmers called Englishby into her office to ask her why she had not signed the statement. Simmers said she was concerned about Razner as she was continuously written up for suspicion of alcohol and other problems unrelated to her alcohol use. Simmers told Englishby she thought Razner was an alcoholic, that Razner "had a drinking problem," and "had been doing the job for too long and she needed to retire." Although Englishby eventually signed the statement, there is no evidence that the proposed statement was shown to anyone.
Englishby described Simmers as exhibiting a "hostile demeanor" toward Razner from the time Razner started working for Simmers but did not attribute Simmers' dislike of Razner to any problem with alcohol. Englishby never heard Simmers tell anyone else that she believed Razner was an alcoholic. In fact, all of the conversations or gossip she heard were about Razner being tested for alcohol or someone having smelled alcohol on her breath.
Although there were no further instances of Razner's drinking or references to her being an alcoholic, the animosity between Razner and Simmers continued to grow. A few months before Razner submitted her resignation, the two engaged in a bitter exchange. In front of patients and staff, Razner complained to Simmers that she could not handle the volume of patients being scheduled during her shift. Simmers bluntly told her that if she could not handle it, she would happily accept her resignation. That night, Razner began looking for another job. A few days later, when she was hired by another hospital, Razner submitted her resignation. Razner did not believe that the over scheduling was intentional or that she was the only sonographer who complained about the high volume of patients.
Razner's third amended complaint alleged that the actions of Wellington, Simmers, and Thomas constituted handicap discrimination and defamation. Count I alleged that Wellington had violated the Florida Civil Rights Act because it regarded her as an alcoholic and had created a hostile work environment based on that erroneous perception. The remaining counts, II, III, and IV, were against Wellington, Simmers, and Thomas, respectively, and alleged defamation. The trial court entered summary judgment for Appellees on all counts.
We conclude that summary judgment was properly entered against Razner as there are no genuine issues of fact and the appellees are entitled to judgment as a matter of law. See Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla.1977); Fla. R. Civ. P. 1.510(c).
When reviewing a claim of adverse employment action based on handicap discrimination, courts construe the Florida Civil Rights Act of 1992 (FCRA) in accordance with the Americans with Disabilities Act, 42 U.S.C., § 12101 et seq. (ADA) and related regulations. See Tourville v. Securex, Inc., 769 So.2d 491, 492 n. 1 (Fla. 4th DCA 2000); McCaw Cellular Communications of Fla., Inc. v. Kwiatek, 763 So.2d 1063, 1065 (Fla. 4th DCA 1999); Greene v. Seminole Elec. Coop., Inc., 701 So.2d 646, 647 (Fla. 5th DCA 1997). The FCRA prohibits an employer from discriminating against an employee based on a handicap, unless the absence of the handicapping condition is necessary based on a bona fide occupational qualification. § 760.10(1)(a), (8)(a) Fla. Stat. (2001).
Claims made under the FCRA or ADA usually pertain to an employer's discriminatory practice in hiring, firing, or promoting an employee. When, as here, it *441 is alleged that the handicap discrimination by the employer amounts to harassment, we have previously held that the claim is analyzed in accordance with Title VII hostile work environment cases.[1]Kwiatek, 763 So.2d at 1065. To survive summary judgment on a claim of harassment based on handicap discrimination, the plaintiff must show that she or he: (1) is a qualified individual with a disability under the ADA; (2) was subject to unwelcome harassment; (3) the harassment was based on his or her disability; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his or her employment and to create an abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Id. at 1066.
Here, summary judgment was proper where Razner failed to establish she was handicapped under the FCRA.
While the FCRA does not define the word "handicap," the Fifth District has looked to the Fair Housing Act which gives the term, for purposes of this case, the following meaning:
A person has a physical or mental impairment which substantially limits one or more major life activities, or he or she has a record of having, or is regarded as having, such physical or mental impairment....
§ 760.22(7)(a), Fla. Stat. (2001); see Greene, 701 So.2d at 648 (applying Fair Housing Act's definition of "handicapped" to overrule trial court's dismissal of claim because court erroneously found that FCRA only protected persons with actual, rather than perceived, disabilities). Applying that definition, a person who has no impairment at all, but is regarded by the employer as having a substantially limiting impairment, may recover for discrimination. Id. at 647; see also Deas v. River West, L.P., 152 F.3d 471, 475 (5th Cir. 1998).
We need not address whether alcoholism is a handicap or whether discrimination against an employee based on a perception that he or she is an "alcoholic" is covered by the FCRA. For the purpose of this appeal, we assume such to be the case. Here, there is no evidence that Razner suffered from alcoholism or that she was unqualified for her job. Her burden was in proving that Wellington regarded her as a person suffering from an impairment that substantially limited one or more major life activities. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). "When the major life activity under consideration is that of working, the statutory phrase `substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Id. at 491, 119 S.Ct. 2139.
Clearly, there is no violation of the Act by Wellington and its staff taking reasonable measures to insure that its employee, suspected of drinking on the job or while "on call," is not doing so. Simmers was warranted in reprimanding Razner the first time another co-worker complained that she smelled of alcohol and for conducting a blood test the second time she was suspected of drinking alcohol on the job.
We do not construe the blood testing of an employee under these circumstances as evidence that the employee was "regarded as" an alcoholic, nor do we interpret this *442 precautionary measure as discriminatory conduct. See Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999)("The ADA does not, indeed cannot, require a police department to forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries."). Therefore, having determined that Razner failed to establish she was handicapped under the FCRA, we need not consider the other elements under Kwiatek. As such, summary judgment in favor of Wellington was the proper course.
The trial court also did not err in granting summary judgment based on Razner's defamation claims. To establish a cause of action for defamation, a plaintiff must show that (1) the defendant published a false statement about the plaintiff, (2) to a third party, and (3) the falsity of the statement caused injury to the plaintiff. Valencia v. Citibank Int'l., 728 So.2d 330, 330 (Fla. 3d DCA 1999). When bringing a cause of action for defamation based on oral statements, a plaintiff need not set out the defamatory language verbatim; it is sufficient that the plaintiff set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory. Edward L. Nezelek, Inc. v. Sunbeam Television Corp., 413 So.2d 51, 55 (Fla. 3d DCA 1982).
Here, Razner's third amended complaint alleged only that Thomas and Simmers told Englishby that Razner "had come to work impaired." Englishby's statement is that she could not recall whether Thomas had used those exact words or had said that someone else told Thomas that Razner was impaired. This statement was not defamatory because Simmers and Thomas had an interest in whether Englishby would cover Razner's shift as supervisors of the department, and Englishby had a corresponding interest in the subject matter. See Demby v. English, 667 So.2d 350, 353 (Fla. 1st DCA 1995)(explaining that person who publishes defamatory matter is not liable if statements are published in good faith and upon a conditionally privileged occasion).
Even in an atmosphere of some hostility, neither Thomas nor Simmers said more than was reasonable to convey to Englishby that the surprising events surrounding Razner's absence caused her to have less notice than she would normally expect. Certainly the circumstances prompting the conversation would normally be the subject of office discussion.
The other statements Razner asks us to consider, despite the trial court's denial of her ore tenus motion to amend her third amended complaint, were not actionable because they were either true or opinion. See From v. Tallahassee Democrat, Inc., 400 So.2d 52, 56 (Fla. 1st DCA 1981)("Under the First Amendment there is no such thing as a false idea"). A statement is pure opinion, as a matter of law, when it is based on facts which are otherwise known or available to the reader or listener. Id.
Here, although Simmers told Englishby she thought Razner was an alcoholic and needed to retire, the comment must be considered in the context of this communication. In this context, the trial court properly recognized the statement as opinion where Englishby was aware of Razner's blood test and Simmons' distaste in general for Razner. Razner also alleged in her statement of disputed facts that after being tested for alcohol, Jones told Englishby that she smelled alcohol on Razner's breath and asked Englishby to sign a paper claiming to have also smelled alcohol on Razner. Again, this statement is not actionable because Englishby did not *443 believe it and the paper was never published to anyone else.
The only statements that may have injured Razner were the statements involving Razner's blood test that circulated throughout the hospital. These statements, though not alleged in the third complaint, do not rise to the level of defamation because they are true.
Therefore, we affirm summary judgment in favor of the appellees.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] Title VII only makes it an unlawful employment practice to discriminate on the basis of race, color, religion, sex, or national origin. Civil Rights Act of 1964, §§ 701 et seq., 703(a)(1), as amended, 42 U.S.C.A. §§ 2000e et seq., 2000e-2(a)(1).